UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

DOUGLAS KINSEY,

        Plaintiff,

  - against -

CENDANT CORPORATION, FAIRFIELD
RESORTS INC., and FFD DEVELOPMENT
COMPANY, L.L.C.,

        Defendants.

------------------------------------------X

04 Civ. 0582 (RWS)

O P I N I O N

8/11/05

A P P E A R A N C E S:

    KING, PAGANO & HARRISON
    Attorneys for Plaintiff
    425 Park Avenue
    New York, NY 10022
    By:  JEFFREY W. PAGANO, ESQ.
        IRA M. SAXE, ESQ.
        Of Counsel

    SKADDEN, ARPS, SLATE, MEAGHER & FLOM
    Attorneys for Defendants
    Four Times Square
    New York, NY 10036-6522
    By:  SAMUEL KADET, ESQ.
        SHIRA FRANCO, ESQ.
        Of Counsel



Sweet, D.J.,

The plaintiff Douglas Kinsey ("Kinsey") has moved pursuant to Rule 15(a), Fed. R. Civ. P., for leave to file a Second Amended Complaint ("SAC") against the defendants Cendant Corporation ("Cendant"), Fairfield Resorts Inc. ("Fairfield") and FFD Development Company, L.L.C. ("FFD") (collectively the "Defendants"). The Defendants have moved to sanction Kinsey pursuant to Rule 11, Fed. R. Civ. P. For the reasons set forth below, both motions are denied.

**Prior Proceedings**

Kinsey commenced this action on January 26, 2004 by filing a complaint (the "Complaint") against Fairfield, FFD, Cendant and the Cendant Corporation Employee Stock Purchase Plan (collectively the "Initial Defendants"), alleging a violation of ERISA, securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, and various common law claims, as well as a state law claim against the Initial Defendants for their purported failure to pay Kinsey for accrued, unused vacation benefits.

The Initial Defendants moved to dismiss the Complaint on March 26, 2004. Kinsey filed an Amended Complaint on April 23, 2004 in which he abandoned, inter alia, the ERISA claims and

dropped the Cendant Corporation Employee Stock Purchase Plan as a defendant, and the Defendants moved to dismiss the claim for securities fraud (Count 1), breach of fiduciary duty (Count 3), breach of the implied duty of good faith and fair dealing (Count 4), fraud and deceit (Count 5), unjust enrichment (Count 8) and the negligence claim (Count 7) to the extent that claim was based on gross negligence.

In an opinion and order issued on November 16, 2004 (the "November 16 Opinion"), familiarity with which is assumed, the Court granted Defendants' motion in full, dismissing Counts 1, 3, 4, 5 and 8 of the Amended Complaint and Count 7 in part. See Kinsey v. Cendant Corp., No. 04 Civ. 0582, 2004 WL 2591946, at *19 (S.D.N.Y. Nov. 16, 2004). Kinsey also was granted leave to move to file a second amended complaint. See id.

On December 16, 2004 Kinsey moved for leave to file the SAC which abandoned the claim for securities fraud and common law claims for breach of the implied duty of good faith and fair dealing and unjust enrichment and restated the claims for breach of fiduciary duty (Count 2), fraud and deceit (Count 3), and gross negligence (Count 5). (See SAC ¶¶ 107-133, 146-52). The remaining claims in the SAC were included in the Amended Complaint and were not the subject of Defendants' motion to dismiss. They include claims for breach of contract (Count 1), negligent misrepresenta-

tion (Count 4), failure to pay wages (Count 6) and declaratory judgment (Count 7).

The Defendants moved for sanctions, and both motions were heard and marked fully submitted on March 23, 2005.

**The Facts**

The facts set forth in the November 16 Opinion derived from the Complaint remain essentially unchanged as alleged in the SAC. The additional allegations in the SAC will be discussed below.

**The Applicable Standard For Amendment**

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires." The federal courts, however, have interpreted Rule 15 to permit such amendments only when (1) the party seeking the amendment has not unduly delayed, (2) when that party is not acting in bad faith or with a dilatory motive, (3) when the opposing party will not be unduly prejudiced by the amendment, and (4) when the amendment is not futile. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); see Mackensworth v. S.S. Am. Merchant, 28 F.3d 246, 251 (2d Cir. 1994);

Prudential Ins. Co. v. BMC Indus., Inc., 655 F. Supp. 710, 711 (S.D.N.Y. 1987).

"[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile." Ellis v. Chao, 336 F.3d 114, 126 (2d Cir. 2003) (citing Foman, 371 U.S. at 182). See Nowakowski v. Kohlberg, No. 89 Civ. 5621, 1991 U.S. Dist. LEXIS 107, at *5 (S.D.N.Y. Jan. 8, 1991). An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis. See, e.g., S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28, 42 (2d Cir. 1979); Freeman v. Marine Midland Bank-New York, 494 F.2d 1334, 1338 (2d Cir. 1974).

More specifically, a proposed amendment to a pleading is deemed to be futile if "it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003) (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)). See Aniero Concrete Co. v. New York City Construction Auth., Nos. 84 Civ. 9111, 95 Civ. 3506, 1998 WL 148324, at *7 (S.D.N.Y. Mar. 30, 1998); Finlay v. Simonovich, No. 97 Civ. 1455 (AJP) (DAB), 1997 WL 746460, at *4 (S.D.N.Y. Dec. 2, 1997). For the purposes of evaluating futility, the 12(b)(6) standard is applied: All well pleaded allegations are accepted as true, and all inferences are

drawn in favor of the pleader. See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).

Kinsey has acknowledged that amendment is futile if the proposed amended complaint would not survive a motion to dismiss. See Pl. Mem. at 2; Nowakowski, 1991 U.S. Dist. LEXIS 107, at *5. According to the Defendants, the claims for fraud, breach of fiduciary duty and gross negligence in the SAC are legally defective under Rules 9(b) and 12(b)(6), Fed. R. Civ. P., requiring consideration of each of these claims.

**Discussion**

    I.   **The SAC Fails To Allege Fraud Adequately**

        A.   **The Standard**

The Second Circuit has made clear that Rule 9(b) has three salutary objectives: to "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 663 (2d Cir. 1997) (internal quotations omitted); Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).

Rule 9(b) requires that to allege a claim for fraud adequately, a complaint must contain particularized facts that "give rise to a strong inference" of scienter on the part of the defendant. Id. at 663; see also id. at 664 (affirming dismissal of fraud claims where "allegations, even taken together, [were] insufficient to raise a strong inference of fraudulent intent").

The requisite "strong inference" of scienter may be established "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." See Shields, 25 F.3d at 1128 (2d Cir. 1994). The November 16 Opinion stated, "although Rule 9(b) provides that the requisite state of mind may be 'averred generally' . . . rule 9(b) is not a 'license to base claims of fraud on speculation and conclusory allegations.'" See Kinsey, 2004 WL 2591946, at *17 (citing Acito v. Imcera Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995) (quoting Wexner v. First Manhattan Co., 902 F.2d 169, 172) (2d Cir. 1990) (internal quotations omitted)).

### B.  The Additional Allegations

According to Kinsey:

> Cendant formed FFD, an "off-balance sheet" entity, to perpetuate a "fraudulent scheme to hide the assets and debt acquired with the Fairfield acquisition." (SAC ¶¶ 22, 26).

6

Kinsey's "designation" as an employee of FFD was "fraudulent," and "an essential element of the fraudulent scheme to maintain the fiction concerning FFD was to ensure that Plaintiff could not exercise his options." (Id. ¶ 26).

The value of stock options awarded to Cendant's CEO were "artificially inflated by the scheme to hide the newly-acquired assets of Fairfield in an off balance sheet company." (Id. ¶ 28).

At the time it acquired Fairfield in April 2001, Cendant sought to "mislead the public regarding the value of the company" by "failing to recognize the stock options issued to its executives as an expense" and, as part of a "scheme" to understate its supposed liabilities for its employee stock options, sought to maintain FFD as a separate "off-balance sheet" company. (Id. ¶¶ 29-30).

In order "to increase its chances of prevailing" in securities fraud litigation unrelated to Fairfield, the bulk of which was settled in 1999, and "to salvage its [tarnished] public image," Cendant "sought to maintain the false impression the FFD was a separate company ..." (Id. ¶¶ 27, 30); and

After Cendant announced in August 2002 it would reduce awards of employee stock options, it needed to ensure Kinsey would be unable to exercise his options in order to, in turn, ensure that Cendant would not become "embroiled in further scandal or lawsuits in connection with its scheme." (Id. ¶ 71).

As the November 16 Opinion stated, even accepting arguendo Kinsey's allegations about a scheme to hide assets "off balance sheet" and improperly account for stock option awards, "there are no allegations in the Amended Complaint suggesting how the purported misrepresentations to Kinsey concerning the exercise period for his Awarded Options, later the converted stock options, could have furthered that scheme." See Kinsey, 2004 WL 2591946, at *11.

7



The SAC seeks to overcome this motivational lack by asserting:

> Cendant determined that if Plaintiff [Kinsey] was allowed to exercise his stock options pursuant to his stock option agreement, it would demonstrate that FFD was in fact not an independent entity, and that Cendant should not have placed Fairfield's assets and liability [sic] in FFD on an off-balance sheet basis.

(SAC ¶ 124).

### C. Particularized Facts Showing Motive and Opportunity to Commit Fraud Have Not Been Alleged Adequately

The SAC is silent on how or why Kinsey's mere exercise, while he was employed by FFD (or after he left FFD), of 33,918 options granted to him while he worked for Fairfield would have undermined FFD's independence from Cendant or shown that Cendant should not have placed Fairfield's assets and liabilities in FFD "on an off-balance sheet basis."

Furthermore, according to Kinsey's own allegations, this motive to commit fraud did not arise until August 2002, when Kinsey alleges "Cendant determined that it would take any action to ensure that it was not embroiled in further scandal or lawsuits in connection with its scheme to hide the assets and liabilities of Fairfield in an off-balance sheet company, FFD," and that Cendant, "[i]n order to succeed" in its scheme, "needed to ensure that

8

Plaintiff remained unable to exercise his stock options." (See id. ¶ 71). The purported "scheme," as described in the SAC could not have been a motive for the alleged fraud about which Kinsey complains, which supposedly occurred in the course of his purported negotiations with Defendants concerning his employment with FFD from December 2000 through April 2001 and his alleged communications with Greg Bendlin in July and August 2001. (See id. ¶¶ 34-35, 52-55).

The November 16 Opinion conclusions that the allegations in the Amended Complaint with respect to motive were insufficient under Rule 9(b) remain equally applicable to the instant motion. In the Amended Complaint, Kinsey made nearly identical allegations "concerning Cendant's 'questionable accounting practices' . . . at or around the time of the merger and Cendant's 'scheme to understate its liabilities for off balance sheet entities and its employee stock options.'" Kinsey, 2004 WL 2591946, at *11 (quoting Amended Complaint); see id. at *17. The November 16 Opinion concluded that such "allegations of general wrongdoing and the reduction in the award of employee stock options have no discernible bearing on any motive that the Defendants may have had to misrepresent to Kinsey the relevant exercise period for his converted stock options." Id. at *11; see id. at *17. This conclusion was further supported by the "timing" of Kinsey's allegations concerning the August 2002 announcement by Cendant that it would begin recording stock option awards as expenses in January

9

2003 and reduce the issuance of employee stock options in the future, which the Court noted "came well after the summer of 2001, when the only misleading statements alleged with sufficient particularity purportedly occurred." Id. at *11.

The Court's previous conclusion that scienter had not been pled adequately has not been altered by the additional allegations in the SAC.

> D. **Particularized Facts Showing Conscious Misbehavior Or Recklessness Have Not Been Alleged Adequately**

When a plaintiff cannot demonstrate a motive to commit fraud, an even stronger inference of recklessness is required. See Chill v. Gen. Elec. Co., 101 F.3d 263, 269 (2d Cir. 1996) ("[R]eckless conduct is, at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." (internal quotations omitted) (citing Rolf v. Blyth, Eastman Dillon & Co., 570 F.2d 38, 47 (2d Cir.1978) (alteration in original and quotation omitted), op. am., Nos. 77- 7104, 77-7124, 1978 WL 4098 (2d Cir. May 22, 1978), cert. denied, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978)); see also Kalnit v. Eichler, 264 F.3d 131, 142 (2d Cir. 2001) (same).

10

The November 16 Opinion concluded that with respect to Kinsey's allegations concerning the e-mails purportedly sent by Bendlin in the summer of 2001, the "Amended Complaint [does not] offer particularized facts from which to conclude[] that Bendlin acted knowingly or recklessly when he made the representations at issue." See Kinsey, 2004 WL 2591946, at *13. In an effort to cure the deficiencies of this point identified by the Court, Kinsey alleges that Berk and certain unidentified "other Fairfield executives" had "access to the correct information" concerning the expiration date of his awarded options. (See SAC ¶ 38).

However, conclusory allegations that a corporate officer had "access" to information that contradicted the alleged misstatements are insufficient to raise a strong inference of recklessness. See In re Health Mgmt. Sys., Inc. Sec. Litig., No. 97 Civ. 1865 (HB), 1998 WL 283286, at *6 (S.D.N.Y. June 1, 1998) (allegations that, "because of defendants' . . . executive managerial positions, they had access to information" that contradicted allegedly misleading statements were "insufficient to establish actual intent or conscious recklessness"); Glickman v. Alexander & Alexander Servs., Inc., No. 93 Civ. 7594 (LAP), 1996 WL 88570, at *14 (S.D.N.Y. Feb. 29, 1996) (mere access to information "is an inadequate basis for scienter" given that it "would expose virtually any CEO, by virtue of his or her position alone, to liability"); see also Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1036 (9th Cir. 2002) (conclusory allegations of access to data

11

insufficient to establish that officers had knowledge that would cause representations to be "consciously misleading") (internal quotations omitted).

Further, the proposition that knowledge, as opposed to recklessness, would be ascribed to Defendants based on allegations that certain corporate officers may have had knowledge or information concerning the expiration date of Kinsey's options at or around the same time that other officers, such as Berk or Bendlin, allegedly misled Kinsey as to the exercise period for the options has already been rejected by the Court. See Kinsey, 2004 WL 2591946, at *13.

For the foregoing reasons, the SAC fails to allege adequately its asserted fraud claims.

## II. The SAC Fails To Allege Adequately A Breach Of Fiduciary Duty

The November 16 Opinion concluded, "[t]he law . . . will not imply a fiduciary relationship based merely on Kinsey's status as an employee." See Kinsey, 2004 WL 2591946, at *14 (citing cases); see also Onanuga v. Pfizer, Inc., No. 03 Civ. 5405 (CM), 2003 WL 22670842, at *3 (S.D.N.Y. Nov. 7, 2003) ("[A]n employer-employee relationship is not fiduciary in nature . . ."). Nor does Kinsey's status as a contractual option holder of Fairfield or Cendant shares suffice to create a fiduciary relationship. See

12

Glinert v. Wickes Cos., No. 10407, 1990 WL 34703, at *9 (Del. Ch. Mar. 27, 1900), aff'd, 586 A.2d 1201 (Del. 1990) ("under our law, the option feature of these instruments does not qualify for the protections that flow from a fiduciary duty."); see also In re Cendant Corp. Sec. Litig., 76 F. Supp. 2d 539, 549-50 (D.N.J. 1999) (employee was not owed fiduciary duty under stock option plan).

The proposed breach of fiduciary duty claim appears to be predicated on the theory that Defendants owed Kinsey a fiduciary duty at the time of alleged misrepresentations concerning the exercise period for his Awarded Options "[b]ased upon the business and personal relations" Kinsey alleges he had with Franz Hanning, the president and CEO of Fairfield. (See SAC ¶ 108). The November 16 Opinion rejected this theory, holding that alleged "business and personal relations" between Kinsey and certain officers, directors and executives of the Defendants "are not sufficient allegations of fact to demonstrate the existence of a fiduciary relationship" between Kinsey and the Defendants. See Kinsey, 2004 WL 2591946, at *14; see also Freedman v. Perlman, 706 N.Y.S.2d 405, 271 A.D.2d 301, 305 (1st Dep't 2000) (allegations that employee "trusted" employer "to treat him fairly . . . does not give rise to a fiduciary duty").

The SAC appears to allege that Fairfield or Cendant violated a fiduciary duty they owed Kinsey because Hanning allegedly failed in April 2003, after Kinsey's dispute with Cendant

13

and Fairfield concerning the exercise period for the awarded options arose, to assist Kinsey in "resolving the problems surrounding the exercise of his shares." (See SAC ¶¶ 79-82, 108). Even if a fiduciary relationship existed in theory, there is no legal basis for applying it to resolve the dispute in Kinsey's favor and to Fairfield's and Cendant's detriment.

No fiduciary duty is established based on Cendant's adoption of an "Employer of Choice" program in October 2001. "Employer of Choice" is a human resources concept. There is no provision in the "Employer of Choice" program cited by Kinsey to create a duty for Cendant to resolve its dispute with Kinsey over his options in Kinsey's favor, nor is there authority cited for such a proposition arising out of Cendant's designation of itself as a desirable place to work.

As such, the elements of a fiduciary claim have not been alleged adequately in the SAC.

### III. The SAC Has Not Adequately Alleged A Claim For Gross Negligence

The November 16 Opinion concluded that a claim for gross negligence was not established when no facts had been alleged to show "why this supposed transmission of misinformation alone establishes the want of scant care, or suggests that Defendants' purported failure to provide accurate information to Kinsey

14

'smacks' of intentional wrongdoing." See Kinsey, 2004 WL 2591946, at *18 (citing cases).

The conclusory allegation that Defendants "acted recklessly and/or with conscious disregard" (see SAC ¶ 150), does not meet the standard required to adequately plead a gross negligence claim. See Ruffolo v. Oppenheimer & Co., No. 90 Civ. 4593 (SWK), 1991 WL 17857, at *2 (S.D.N.Y. Feb. 5, 1991) (mere recitations of "conclusory, boiler-plate allegations that defendants were 'reckless' or 'negligent'" do not "comply with the minimal pleading requirements of Rule []8"), aff'd, 987 F.2d 129 (2d Cir. 1993); Tevdorachvili v. Chase Manhattan Bank, 103 F. Supp. 2d 632, 644 (E.D.N.Y. 2000) (claim for gross negligence and recklessness dismissed where plaintiff "allege[d], albeit by nothing more than a rhetorical flourish, that [defendant] was 'reckless'" because "in the absence of factual allegations showing more, heated language and indignation will not suffice").

Furthermore, to the extent Kinsey's gross negligence claim appears to be based on the allegations that Defendants had access to information concerning the expiration period for his awarded options and failed to accurately convey that information to him, (see SAC ¶ 150), it may be sufficient to demonstrate ordinary negligence, at most, but it does not meet the heightened standard necessary to state a claim for gross negligence. See Sutton Park Dev. Corp. Trading Co. v. Guerin & Guerin Agency, Inc., 745

15

N.Y.S.2d 622, 297 A.D.2d 430, 431 (3d Dep't 2002) (stating that "[g]ross negligence . . . differs in kind as well as degree from ordinary negligence" and requires "factual averments alleging conduct of [an] aggravated character"). To conclude otherwise would convert an allegedly negligent transmission of information into one for gross negligence, a proposition without any authority advanced by Kinsey.

The standard for pleading gross negligence has not been met by the SAC.

### IV. The Motion For Sanctions Is Denied

While the allegations of the SAC have been found wanting and the conclusions of the November 16 Opinion reaffirmed, the Defendants have failed to establish bad faith, harassment, intent to delay or to increase the cost of litigation on the part of Kinsey. Although the question is a close one, it is resolved in Kinsey's favor in this instance.

The motion for sanctions is denied.

## Conclusion

The motion for leave to file the SAC is denied, as is the motion for sanctions. The parties will meet and confer on a discovery and trial schedule.

It is so ordered.

**New York, NY**
**August** /6 **, 2005**

ROBERT W. SWEET
U.S.D.J.

17