UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

DOUGLAS KINSEY,

                    Plaintiff,               04 Civ. 582

     -against-                      OPINION

CENDANT CORPORATION, FAIRFIELD
RESORTS INC., and FFD DEVELOPMENT
COMPANY, L.L.C.,

                  Defendants.

------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        KING PAGANO HARRISON
        75 Rockefeller Plaza
        New York, NY  10019
        By:  Ira M. Saxe

        Attorneys for Defendants

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
        Four Times Square
        New York, NY  10036
        By:  Samuel Kadet, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/9/08

**Sweet, D.J.**

Defendants Cendant Corporation ("Cendant"), Fairfield Resorts, Inc. ("Fairfield") and FFD Development Company, LLC ("FFD") (collectively, the "Defendants") have moved under Rule 56, Fed. R. Civ. P. for summary judgment to dismiss the claims of plaintiff Douglas Kinsey ("Kinsey" or the "Plaintiff") alleging negligent misrepresentation and negligence. On the findings and conclusions set forth below, the motion is granted as to Cendant and Fairfield and denied as to FFD.

The controversy over the expiration date of stock options between Kinsey, a former employee of Fairfield and FFD, and the Defendants has been hard fought. The difficulties of the relationship result from changes in corporate form and Kinsey's employment first at Fairfield, then FFD, then Fairfield again and finally with a competitor of the Defendants. Because no duty of care has been established with respect to Fairfield and Cendant in connection with the claimed negligent misrepresentation and negligence, dismissal of the claims against them is appropriate. Because there are factual issues as to the claims against FFD, summary judgment is not appropriate.

1

## I.    PRIOR PROCEEDINGS

The Defendants have previously made successful motions

to dismiss and for summary judgment on all counts in the Amended

Complaint with the exception of Counts 6 (Negligence) and 7

(Negligent Misrepresentation).   See Kinsey v. Cendant Corp., No.

04 Civ. 0582, 2004 WL 2591946 (S.D.N.Y. Nov. 16, 2004); Kinsey

v. Cendant Corp., 521 F. Supp. 2d 292 (S.D.N.Y. 2007).   Since

the Court's November 6, 2007 Opinion, the parties have engaged

in an unsuccessful mediation of the remaining claims.

The instant motion was heard and marked fully

submitted on March 26, 2008.[1]

## II.    THE FACTS

The facts are set forth in Defendants' Local Rule 56.1

Statement and Plaintiff's Response and Statement of Additional

---

[1]A scheduling order of October 12, 2006, required that all motions be
submitted by April 12, 2007. A subsequent scheduling order was entered on
January 24, 2008, providing for completion of discovery and the filing of in
limine motions. Kinsey has contended that the Defendants' motion is untimely
under the Court's Order of October 12, 2006 (the "October Order"), and argues
that Rule 6(b), Fed. R. Civ. P. bars the Defendants' motion. However, Rule
6(b) embodies an "elastic concept" affording district courts the discretion
to enlarge the time allowed for motions in appropriate circumstances. See
Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 391-
92 (1993). Even if the instant motion is untimely, the Court may, in its
discretion, hear the motion in order to narrow the issues for trial. The
motion will therefore be considered on its merits.

Material Facts and attached affidavits, and are not in dispute
except as noted below.

Kinsey is a former at-will employee of defendants
Fairfield and FFD.  He holds a bachelor's degree in finance
granted by Western Carolina University in 1983.

Fairfied issued Kinsey stock options under its 1997
Stock Option Plan ("Option Plan") pursuant to the terms of an
Option Agreement between Kinsey and Fairfield, effective May 22,
1997 ("Option Agreement").  The stock options issued to Kinsey
were exercisable within ten years of issuance, i.e. by May 21,
2007.  However, if Kinsey ceased to be an employee of Fairfield
or its subsidiary for any reason other than death or discharge
for cause (or resignation in anticipation of discharge for
cause), he could exercise any vested options only during the
ninety calendar days following the termination of his
employment.

In April, 2001, Cendant acquired Fairfield pursuant to
a merger and assumed outstanding and unexercised options issued
pursuant to the Plan.  In conjunction with the Merger, options
issued pursuant to the Plan, including Kinsey's, automatically
became fully vested and were converted to options to purchase

3

shares of Cendant common stock. Upon Cendant's acquisition of
Fairfield, Kinsey's Fairfield stock options were therefore
converted into options to purchase 33,918 shares of Cendant
common stock at a "strike" price of $8.85 per share. The
Cendant Statement of Stock Option Award issued to Kinsey lists
as the options' expiration date May 21, 2007.

FFD was formed in connection with the transaction
between Fairfield and Cendant, and Kinsey became employed by FFD
on or about April 2, 2001. According to Kinsey, the employment
by FFD was a transfer, not a termination of employment at
Fairfield. However, this issue was resolved by the Court's
November 6, 2007 Opinion, which held that "[t]he contention by
Kinsey that he was 'transferred,' not 'terminated,' is rejected
as semantic and insufficient to create a genuine issue of
material fact." 521 F. Supp. 2d at 306.

On March 21, 2001, the Fairfield Board of Directors
passed a resolution that stated, with regard to options granted
under the Fairfield 1997 Stock Plan:

> if the Optionee's employment with the Company or
> Cendant or any of their respective Subsidiaries
> is terminated in connection with the Optionee
> becoming employed by FFD Development Company, LLC
> or its Subsidiaries, the period during which the
> Optionee may exercise the Option after the
> Optionee's employment with the Company or Cendant

4

or any of their respective Subsidiaries has been terminated will be the longer of the period set forth in the related option agreement or the date that is one year after the date during which the Effective Time occurred; provided, however, if the Optionee's employment with FFD Development Company, LLC or its Subsidiaries is terminated voluntarily by the Optionee, the period during which the Option will be exercisable will be the period stated in the related option agreement commencing from the date the Optionee's employment with FFD Development Company, LLC or its Subsidiaries was terminated.

Cendant sent a notice to Kinsey informing him that his stock options would expire ninety days after the acquisition. On July 3, 2001, Defendants informed Kinsey that the notice that his stock options would expire ninety days after the acquisition was sent to Kinsey in error. Gregory Bendlin, Vice President, General Counsel and Secretary of FFD ("Bendlin"), later confirmed in an email that the stock options of former Fairfield employees who became FFD employees, including Kinsey, had not expired. Bendlin stated that as part of the merger, Fairfield's Board of Directors and Compensation Committee amended the 1997 Stock Option Plan "to provide that continued employment at FFD would count as continued employment under the option plan and the 90 day exercise period would not apply once the optionees were no longer Fairfield employees." Bendlin made no mention of any one-year period.

On or about August 13, 2001, Bendlin once again advised Kinsey, by email, that the options of Kinsey and another similarly situated employee, Brian Keller, had "not expired because of the special provisions made for the Fairfield employees (Brain and Doug) who transferred to FFD," and in so doing re-transmitted his July 3, 2001 email advising Kinsey that "continued employment at FFD would count as continued employment under the" Plan.

On August 14, 2001, Geri Fitterman, the stock option manager at Cendant sent an email regarding certain of Kinsey's stock options ("Awarded Options") to Bendlin. Attached to the August 14 email was a Grant Detail Report, which showed the expiration date of the Awarded Options to be April 1, 2002. The August 14 email stated that Kinsey could "access information about [his] options by contacting Merrill Lynch at 1-800-677-9405."

Bendlin responded to Fitterman the same day, stating that although the Grant Detail Report indicated an expiration date of April 1, 2002, for the Awarded Options, he believed that the expiration date might actually be the "longer of one year from 4/2/01 or the term set forth in the relevant option agreement." Bendlin asked Fitterman in the same email: "After

6

your office has had a chance to look into this, would you mind letting me know whether 4/1/02 is the correct expiration date."

Kinsey was aware of the representation made in the August 13 emails concerning the expiration date of the options. Kinsey has maintained that he received oral representations from Bendlin that the 10-year term applied.

Bendlin acknowledged, in an August 14, 2001 email to Fitterman that Kinsey and Keller were similarly situated in relation to the period in which they were to exercise their converted stock options, which he referred to as "Fairfield Options." Bendlin's email requested: "After your office has had a chance to look into this, would you mind letting me know whether 4/1/02 is the correct expiration date. Then, I can inform Brian and Doug so the matter can be put to rest." Kinsey received and reviewed a copy of the August 14 email.

Kinsey became employed by Fairfield again on or about October 8, 2001.

On October 29, 2001, five months before the April 1, 2002 expiration date, Bendlin sent Kinsey another email, which stated: "My understanding is that you are now a Fairfield

7

employee again. You should probably confirm with Fairfield HR that your converted Fairfield options are still in effect with their original expiration date." The same email chain shows that Kinsey contacted Matt Durfee, Senior Vice President of Human Resources at Fairfield and asked whether he needed "to do anything to preserve [his] existing options." Durfee forwarded Kinsey's request to Roe Sie, Director of Compensation and Benefits who responded directly to Kinsey, informing him that "Geri Fitterman is the only person who can confirm that your original options are still in place, so I'll leave that up to Greg."

According to the Defendants, Kinsey did not contact Fitterman after receiving the October 29 email. According to Kinsey, he had two or three inconclusive verbal communications with Fitterman.

In connection with Cendant's acquisition of Fairfield, Kinsey received an Owners Manual containing information on "keeping track of your stock options," including contact details for Merrill Lynch, the brokerage firm retained by Cendant to provide information and administrative services to employees regarding their Cendant options, and a wallet-sized card reflecting such contact information. Kinsey was aware that

8

Merrill Lynch had been retained to provide information and administrative services regarding the Awarded Options.   Kinsey did not contact Merrill Lynch to obtain information about the expiration date of the Awarded Options.

Kinsey did not experience any gap in employee benefits, such as health insurance, 401(K) benefits or the like, when he transferred from Fairfield to FFD.   No COBRA letter was issued to him in connection with the transfer.

Keller, a Fairfield employee who received stock options under the Plan and transferred to FFD upon Cendant's acquisition of Fairfield, and who is similarly situated to Kinsey in all relevant respects, was allowed to exercise his stock options more than one year after his transfer to FFD.

The management of Fairfield, FFD and Cendant did not advise Kinsey, at any time within one year after the acquisition of Fairfield by Cendant that his stock options would expire in less than ten years.

In 2002, FFD was recognized by Defendants as being part of Cendant.

At the time of his resignation from Fairfield in 2003,
Kinsey was Senior Vice President of Real Estate Acquisitions.
In that position, Kinsey was responsible for significant
acquisition and development projects valued at hundreds of
millions of dollars, which were expected to result in net sales
revenue for Fairfield in the billion-dollar range.

After resigning from Fairfield, Kinsey began working
for Bluegreen Corporation ("Bluegreen"), one of Fairfield's
competitors.  When he joined Bluegreen, it was Kinsey's belief
that he was the fourth highest paid executive at the company,
which he believed to have a market capitalization of
approximately $600 million.

It was not until April 7, 2003, over a year after his
options were said to have expired, that Defendants, through
Richard Meisner, a senior counsel in the Cendant Law Department,
informed Kinsey of their position that "the information [he was]
provided" in relation to the treatment of employment with FFD as
continued employment with Fairfield "was not entirely correct."

**III. THE SUMMARY JUDGMENT STANDARD**

10

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004). The courts do not try issues of fact on a motion for summary judgment, but, rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). If there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is

improper.  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d

Cir. 1994).  However, "the non-moving party may not rely simply

on conclusory allegations or speculation to avoid summary

judgment, but instead must offer evidence to show that its

version of the events is not wholly fanciful."  Morris v.

Lindau, 196 F.3d 102, 109 (2d Cir. 1999) (quotation omitted).


**IV.  DISCUSSION**


**A.    The Claims Against Cendant and Fairfield Are Dismissed**


To establish a claim for negligence under New York

law, a plaintiff must show (1) defendant owed plaintiff a

cognizable duty of care; (2) a breach of the duty; and (3)

plaintiff suffered damage as a proximate result thereof.

Williams v. Utica College of Syracuse Univ., 453 F.3d 112, 116

(2d Cir. 2006); see also Alfaro v. Wal-Mart Stores, Inc., 210

F.3d 111, 114 (2d Cir. 2000).


Kinsey argues that Defendants assumed a duty of care

when Bendlin's undertook to ascertain the expiration date of

Kinsey's options, and did so with superior knowledge.  Memo in

Opp. 16-17.

It has been established that Bendlin was an officer of
FFD at the time he made the representations which Kinsey alleges
that he relief upon.  Kinsey has not stated any facts that could
cause Fairfield or Cendant to be bound by Bendlin's alleged
conduct, given the Court's prior holding that FFD was "a
separate and distinct legal entity" at the time the relevant
representations were made.  November 16, 2007 Decision at 297.
The negligence claims against Cendant and Fairfield are
therefore dismissed.


To support a claim for negligent misrepresentation, a
party must establish "(1) the defendant had a duty, as a result
of a special relationship, to give correct information; (2) the
defendant made a false representation that he or she should have
known was incorrect; (3) the information supplied in the
representation was known by the defendant to be desired by the
plaintiff for a serious purpose; (4) the plaintiff intended to
rely and act upon it; and (5) the plaintiff reasonably relied on
it to his or her detriment."  Hydro Investors, Inc. v. Trafalgar
Power Inc., 227 F.3d 8, 20 (2d Cir. 2000); Brinsights, LLC v.
Charming Shoppes of Del., Inc., 06 Civ. 1745 (CM), 2008 WL
216969, at *7 (S.D.N.Y. Jan. 16, 2008).

Because the allegedly false representations were made by Bendlin, an officer of FFD, while FFD was an independent entity, the negligent misrepresentation claims against Fairfield and Cendant must be dismissed as well.

## B.    Disputes of Fact Bar Summary Judgment in Favor of FFD

FFD is bound by Bendlin's conduct, and questions of fact preclude summary judgment on the questions of whether, through Bendlin's oral and written representations to Kinsey, FFD created a special relationship, assumed a duty of care, and induced Kinsey to reasonable rely on Bendlin's representations for the proposition that his employment by FFD constituted continued employment by Fairfax for the purposes of the Options Plan and Agreement.

The existence of a special relationship is, by necessity, highly fact-specific. Gordon P. Getty Family Trust v. Peltz, 93 Civ. 3162 (DAB), 1998 WL 148425, at *8 (S.D.N.Y. Mar. 27, 1998). Similarly, "[a]lthough the question of whether a duty exists is a question of law, the question of who has the duty is a question of fact." Doud v. U.S., 797 F. Supp. 138, 147 (N.D.N.Y. 1992). The submissions of the parties are not entirely clear on the subject, but it seems that the March 21,

14

2001 resolution of the Fairfield Board that was the subject of
Bendlin's inaccurate representations to Kinsey was kept
confidential by Defendants.  If Kinsey did not have access to
this key document and relied on Bendlin's interpretation of the
document to protect his interests, as well as the content of
Bendlin's representations, he may establish the existence of a
special relationship and that FFD assumed a duty of care.  These
issues are therefore inappropriate for resolution by summary
judgment.

        The question of reasonable reliance is also generally
left to the finder of fact.  Talansky v. Schulman, 770 N.Y.S.2d
48, 54 (App. Div. 2003).  See also Schlaifer Nance & Co. v.
Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997) ("The question
of what constitutes reasonable reliance is always nettlesome
because it is so fact-intensive.").  FFD asserts that the
October 29, 2001 email in which Bendlin stated that Kinsey
"should probably confirm with Fairfield HR that [Kinsey's]
converted Fairfield options are still in effect with their
original expiration date" was a "Red Flag" that precludes a
finding of reasonable reliance.  Reply Memo. 5.  However, the
question of whether Kinsey's reliance on Bendlin was reasonable
in light of subsequent emails and oral communications is a

question of fact not appropriate for resolution by summary
judgment.

These disputes bar summary judgment in favor of FFD.

## Conclusion

Upon the findings and conclusions set forth above, the
motion of Cendant and Fairfield for summary judgment to dismiss
the claims of negligence and negligent misrepresentation against
them is granted.  The motion for summary judgment by FFD is
denied.

Motions in limine will be heard on September 24, 2008
or such other date upon which the parties agree.

It is so ordered.

**New York, N.Y.**
**September  8 , 2008**

_____
ROBERT W. SWEET
U.S.D.J.

16