CROWELL & MORING LLP
Jeffrey W. Pagano (JP 1408)
Ira M. Saxe (IS 6051)
153 East 53rd Street, 31st Floor
New York, New York 10022
(212) 223-4000
(212) 223-4134 (fax)

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------X
                                                         :
**DOUGLAS KINSEY,**                                      :
                                                         :
                **Plaintiff,**                    :   **Document Electronically Filed**
                                                         :
                v.                                :   Case No.  04 CV 00582 RWS
                                                         :
                                                         :
**CENDANT CORPORATION,**                                 :
**FAIRFIELD RESORTS INC.,  AND**                         :
**FFD DEVELOPMENT COMPANY, L.L.C.,**                     :
                                                         :
                **Defendants.**                   :
---------------------------------------------------------X

**PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE**

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF FACTS AND CASE.................................................................... 2

III. THE EVIDENCE SOUGHT TO BE INTRODUCED BY DEFENDANT ....................... 7

IV. ARGUMENT AND AUTHORITIES........................................................................ 9

V. CONCLUSION........................................................................................................ 12

## **TABLE OF AUTHORITIES**

**PAGE**

**CASES**

Brinsights, LLC v. Charming Shoppes of Del., Inc.,
    06 Civ. 1745 (CM), 2008 WL 216969 (S.D.N.Y. Jan. 16, 2008) ........................ 11

Dallas v. Goldberg,
    143 F.Supp.2d 312 (S.D.N.Y. 2001) ................................................................. 10

Hydro Investors, Inc. v. Trafalgar Power Inc.,
    227 F.3d 8 (2d Cir. 2000) .................................................................................. 11

Kinsey v. Cendant Corp.,
    521 F. Supp. 2d 292 (S.D.N.Y. 2007) ................................................................. 3

Koufakis v. Carvel,
    425 F.2d 892 (2d Cir. 1970) ......................................................................... 10, 12

L-3 Commc'ns Corp. v. OSI Sys., Inc.,
    No. 02-9144, 2006 WL 988143 (S.D.N.Y. Apr. 13, 2006) ............................ 10, 12

Luce v. U.S.,
    469 U.S. 38 (1984) .............................................................................................. 9

**FEDERAL RULES OF EVIDENCE**

Fed. R. Evid. 401 ....................................................................................................... 10

Fed. R. Evid. 402 ....................................................................................................... 10

Fed. R. Evid. 403 ....................................................................................................... 10

**OTHER AUTHORITIES**

Charles A. Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE AND
    PROCEDURE: EVIDENCE (1977) ..................................................................... 9

Plaintiff Douglas Kinsey ("Kinsey" or "Plaintiff") respectfully submits his Motion in Limine to exclude the introduction and use at trial of certain evidence by Defendant FFD Development Company, L.L.C. ("FFD" or "Defendant").

## I.

## INTRODUCTION

Kinsey asserts claims for negligent misrepresentation and negligence against Defendant. His claims relate to false representations, and the failure to provide him with accurate information, in relation to the exercise period of certain stock options awarded to him under Fairfield Resorts, Inc.'s ("Fairfield") 1997 Stock Option Plan ("Stock Options"). Based on the negligence and negligent misrepresentations of Defendant, Plaintiff contends, the period within which he could exercise these Stock Options expired before he could exercise them. Had FFD not provided Kinsey with false information relating to the exercise period of the Stock Options, he would have exercised them in a timely manner.

Defendant FFD, along with former Defendants Cendant Corporation and Fairfield (collectively, "Defendants"), have asserted, on motion, various arguments relating to Plaintiff's income at Bluegreen Corporation, his subsequent employer. For example, they have asserted that Kinsey's yearly compensation package at Bluegreen was $390,000, nearly $100,000 more than he was paid by Fairfield prior to his departure from Fairfield. This evidence has no bearing on Plaintiff's claims or Defendant's defenses. Any probative value of such economic evidence, moreover, is substantially outweighed by the potential for unfair prejudice, confusion of the issues, and the misleading of the jury.

For these reasons, as stated in greater detail herein, Plaintiff respectfully requests that the Court exclude any documentary or testimonial evidence sought to be introduced by Defendant regarding Plaintiff's income or the circumstances regarding his subsequent position with Bluegreen.

## II.

## STATEMENT OF FACTS AND CASE

Kinsey is a former at-will employee of FFD and Fairfield. (Opinion, p. 3).[1] Fairfield issued Kinsey the Stock Options under its 1997 Stock Option Plan ("Option Plan") pursuant to the terms of an Option Agreement between Kinsey and Fairfield, effective May 22, 1997 ("Option Agreement"). (Id.). These Stock Options were exercisable within ten years of issuance, i.e. by May 21, 2007. (Id.). However, if Kinsey ceased to be an employee of Fairfield or its subsidiary for any reason other than death or discharge for cause (or resignation in anticipation of discharge for cause), he could exercise any vested options only during the ninety calendar days following the termination of his employment. (Id.).

In April 2001, Cendant acquired Fairfield pursuant to a merger and assumed outstanding and unexercised options issued pursuant to the Plan. (Id.). In conjunction with the merger, options issued pursuant to the Plan, including Kinsey's Stock Options, automatically became fully vested and were converted to options to purchase shares of Cendant common stock. (Id. at pp. 3-4). Upon Cendant's acquisition of Fairfield, Kinsey's Fairfield stock options were therefore converted into options to purchase 33,918 shares of Cendant common stock at a

---

[1] For the convenience of the Court, the Statement of Facts and Case will be taken, for purposes of the instant Motion in Limine, from the Court's Opinion in this action, dated September 8, 2008, granting in part and denying in part the motion for summary judgment filed by Defendants ("Opinion").

"strike" price of $8.85 per share. (Id. at p. 4). The Cendant Statement of Stock Option Award issued to Kinsey lists as the Stock Options' expiration date May 21, 2007. (Id.).

FFD was formed in connection with the transaction between Fairfield and Cendant, and Kinsey became employed by FFD on or about April 2, 2001. (Id.). The Court rejected "[t]he contention by Kinsey that he was 'transferred,' not 'terminated'. . . ." (Id., citing the Court's November 6, 2007 Opinion, 521 F. Supp. 2d 292, 306 (S.D.N.Y. 2007)).

On March 21, 2001, the Fairfield Board of Directors passed a resolution that stated, with regard to options granted under the Fairfield 1997 Stock Plan:

> if the Optionee's employment with the Company or Cendant or any of their respective Subsidiaries is terminated in connection with the Optionee becoming employed by FFD Development Company, LLC or its Subsidiaries, the period during which the Optionee may exercise the Option after the Optionee's employment with the Company or Cendant or any of their respective Subsidiaries has been terminated will be the longer of the period set forth in the related option agreement or the date that is one year after the date during which the Effective Time occurred; provided, however, if the Optionee's employment with FFD . . . or its Subsidiaries is terminated voluntarily by the Optionee, the period during which the Option will be exercisable will be the period stated in the related option agreement commencing from the date the Optionee's employment with FFD . . . or its Subsidiaries was terminated. (Opinion, pp. 4-5).

Cendant sent a notice to Kinsey informing him that his Stock Options would expire ninety days after the acquisition. (Id. at p. 5). On July 3, 2001, Defendants informed Kinsey that the notice that his Stock Options would expire ninety days after the acquisition was sent to Kinsey in error. (Id.). Gregory Bendlin, Vice President, General Counsel and Secretary of FFD ("Bendlin"), later confirmed in an email that the stock options of former Fairfield employees who became FFD employees, including Kinsey, had not expired. (Id.). Bendlin

3

stated that as a part of the merger, Fairfield's Board of Directors and Compensation Committee amended the 1997 Stock Option Plan "to provide that continued employment at FFD would count as continued employment under the option plan and the 90 day exercise period would not apply once the optionees were no longer Fairfield employees." (Id.).  Bendlin made no mention of any one-year period. (Id.).

On or about August 13, 2001, Bendlin once again advised Kinsey, by email, that the options of Kinsey and another similarly situated employee, Brian Keller ("Keller"), had "not expired because of the special provisions made for the Fairfield employees (Brian and Doug) who transferred to FFD," and in so doing re-transmitted his July 3, 2001 email advising Kinsey that "continued employment at FFD would count as continued employment under the" Plan. (Id. at p. 6).

On August 14, 2001, Geri Fitterman ("Fitterman"), the stock option manager at Cendant sent an email regarding certain of Kinsey's Stock Options to Bendlin. (Id.).  Attached to the August 14 email was a Grant Detail Report, which showed the expiration date of the Awarded Options to be April 1, 2002.  The August 14 email stated that Kinsey could "access information about [his] options by contacting Merrill Lynch at 1-800-667-9405." (Id.).

Bendlin responded to Fitterman the same day, stating that although the Grant Detail Report indicated an expiration date of April 1, 2002, for his Stock Options he believed that the expiration date might actually be the "longer of one year from 4/02/01 or the term set forth in the relevant option agreement." (Id.).  Bendlin asked Fitterman in the same email: "After your office has had a chance to look into this, would you mind letting me know whether 4/1/02 is the correct expiration date." (Id. at pp. 6-7).

4

Kinsey was aware of the representation made in the August 13 emails concerning the expiration date of the options. (Id. at p. 7). Kinsey has maintained that he received oral representations from Bendlin that the 10-year term applied. (Id.).

Bendlin acknowledged, in an August 14, 2001 email to Fitterman, that Kinsey and Keller were similarly situated in relation to the period in which they were to exercise their converted stock options, which he referred to as "Fairfield Options." (Id.). Bendlin's email requested: "After your office has had a chance to look into this, would you mind letting me know whether 4/1/02 is the correct expiration date. Then, I can inform Brian and Doug so the matter can be put to rest." (Id.). Kinsey received and reviewed a copy of the August 14 email. (Id.).

Kinsey became employed by Fairfield again on or about October 8, 2001. (Id.). On October 29, 2001, five months before the April 1, 2002 expiration date, Bendlin sent Kinsey another email, which stated: "My understanding is that you are now a Fairfield employee again. You should probably confirm with Fairfield HR that your converted Fairfield options are still in effect with their original expiration date." (Id. at pp. 7-8). The same email chain shows that Kinsey contacted Matt Durfee ("Durfee"), Senior Vice President of Human Resources at Fairfield and asked whether he needed "to do anything to preserve [his] existing options." (Id. at p. 8). Durfee forwarded Kinsey's request to Roe Sie, Director of Compensation and Benefits who responded directly to Kinsey, informing him that "Geri Fitterman is the only person who can confirm that your original options are still in place, so I'll leave that up to Greg." (Id.).

According to the Defendants, Kinsey did not contact Fitterman after receiving the October 29 email. (Id.). According to Kinsey, he had two or three inconclusive verbal communications with Fitterman. (Id.).

In connection with Cendant's acquisition of Fairfield, Kinsey received an Owners Manual containing information on "keeping track of your stock options," including contact details for Merrill Lynch, the brokerage firm retained by Cendant to provide information and administrative services to employees regarding their Cendant options, and a wallet-sized card reflecting such contact information. (Id.). Kinsey was aware that Merrill Lynch had been retained to provide information and administrative services regarding the Stock Options. (Id. at pp. 8-9). Kinsey did not contact Merrill Lynch to obtain information about the expiration date of the Awarded Options. (Id. at p. 9).

Kinsey did not experience any gap in employee benefits, such as health insurance, 401(K) benefits or the like, when he transferred from Fairfield to FFD. (Id.). No COBRA letter was issued to him in connection with the transfer. (Id.).

Keller, a Fairfield employee who received stock options under the Plan and transferred to FFD upon Cendant's acquisition of Fairfield, and who is similarly situated to Kinsey in all relevant respects, was allowed to exercise his stock options more than one year after he became employed by FFD. (Id.).

The management of Fairfield, FFD and Cendant did not advise Kinsey, at any time within one year after the acquisition of Fairfield by Cendant that his stock options would expire in less than ten years. (Id.). In 2002, FFD was recognized by Defendants as being part of Cendant. (Id.).

6

Case 1:04-cv-00582-RWS    Document 88    Filed 10/20/2008    Page 10 of 16

At the time of his resignation from Fairfield in 2003, Kinsey was Senior Vice President of Real Estate Acquisitions. In that position, Kinsey was responsible for significant acquisition and development projects valued at hundreds of millions of dollars, which were expected to result in net sales revenue for Fairfield in the billion-dollar range. (Id. at p. 10).

After resigning from Fairfield, Kinsey began working for Bluegreen, one of Fairfield's competitors. (Id.). When he joined Bluegreen, it was Kinsey's belief that he was the fourth highest paid executive at the company, which he believed to have a market capitalization of approximately $600 million. (Id.).

It was not until April 7, 2003, over a year after his options were said to have expired, that Defendants, through Richard Meisner, a senior counsel in the Cendant Law Department, informed Kinsey of their position that "the information [he was] provided" in relation to the treatment of employment with FFD as continued employment with Fairfield "was not entirely correct." (Id.).

## III.

## THE EVIDENCE SOUGHT TO BE INTRODUCED BY DEFENDANT

Throughout this action, FFD, along with Defendants Cendant and Fairfield, have raised various arguments relating to Kinsey's compensation at Bluegreen, his subsequent employer. Defendants asserted, in support of their Motion for Summary Judgment, filed March 19, 2007, as follows:

> When Kinsey joined Bluegreen in 2003, his yearly cash compensation package was $390,000, which was approximately $100,000 more than Kinsey was paid by Fairfield before resigning. ([Defendants' Statement of Facts] at ¶ 40-41). In fact, since joining Bluegreen, Kinsey has been the fourth highest paid

7

executive at the company, which has a market capitalization of approximately $600 million. (Id. at ¶ 42). Kinsey remains employed at Bluegreen, and in connection with his employment there Kinsey also has been awarded several options to purchase shares of Bluegreen stock. (Id. at ¶ 43-44). (Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated March 19, 2007, p. 9, Saxe Decl. Exh. A)

Notwithstanding the passage of the summary judgment deadline set forth in the Court's prior Scheduling Order, Defendants filed a second Motion for Summary Judgment on or about February 18, 2008. There, Defendants asserted the following:

> After resigning from Fairfield, Kinsey began working for Bluegreen . . . one of Fairfield's competitors. When he joined Bluegreen, Kinsey was the fourth highest paid executive at the company, which has a market capitalization of approximately $600 million. (Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated February 18, 2008, p. 3, Saxe Decl. Exh. B).

Now, FFD proposes to present testimonial and documentary evidence relating to Kinsey's compensation at Bluegreen. The March 12, 2008 draft pre-trial order transmitted to Kinsey's counsel on behalf of FFD and the other Defendants ("Draft PTO") designates Kinsey's deposition testimony regarding his post-FFD, post-Fairfield compensation at Bluegreen. (Draft PTO, p. 9, Saxe Decl. Exh. C). For example, the Draft PTO designates the following deposition testimony by Kinsey:

- Bluegreen, Kinsey's subsequent employer, had a market capitalization of approximately $600,000,000. (Kinsey Dep. Tr. 27:25-28:14, Saxe Decl. Exh. D);

- Kinsey's annual base when he began employment at Bluegreen was $230,000 or $260,000, plus a bonus or incentive cash compensation of $130,000 or $140,000. (Id. at 29:16-24);

8

- Kinsey's total package at Bluegreen was $390,000, constituting an increase over the amount he was making at Fairfield at the time that he left. (Id. at 31:11-20);

- Kinsey signed an offer letter from Bluegreen on or about May 15, 2003. (Id. at 32:8-33:10);

- Kinsey did not remember the exact amount of compensation that he received from Bluegreen in the seven and one-half months of 2003 that he worked there, but he approximated that amount to be a little more than half of the $260,000, as well as a prorated bonus. (Id. at 33:11-34:3);

- Kinsey did not remember exactly the cash compensation that he received from Bluegreen in 2004, but there probably was some increase above the $390,000 from 2003. (Id. at 34:4-35:5); and

- Kinsey did not remember exactly his 2005 cash compensation from Bluegreen, but it was probably over $400,000. (Id. at 35:6-13).

FFD and the other Defendants also designated, in the Draft PTO, an email chain between Kinsey and George Donovan, a Bluegreen executive, in relation to Kinsey's potential employment there. (Draft PTO, p. 19, Saxe Decl. Exh. C). Among the matters addressed in the emails, dated February 17, 2003, March 6, 2003 and March 9, 2003, are the financial particulars of the offer of employment at Bluegreen provided to Kinsey. (March 9, 2003 email from Kinsey to George Donovan, Kinsey Dep. Exh. 9, Saxe Decl. Exh. E, proposed Defendant Trial Exh. DX-7).

## IV.

## ARGUMENT AND AUTHORITIES

This Court, in accordance with its power to manage trials, may exclude evidence in limine. Luce v. U.S., 469 U.S. 38, 41 n.4 (1984). Motions in limine may be used to prevent an opponent from introducing potentially inadmissible evidence until after the Court has had an opportunity to rule on its admissibility. See Charles A. Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5037 (1977). Motions in limine

9

are primarily intended to prevent unfair prejudice to the objecting party, frequently arising from an irrelevant but compelling inference. Id.

Under the Federal Rules of Evidence, subject to certain limitations, all evidence is admissible if it is relevant, i.e., if it tends to make the existence or nonexistence of a disputed material fact more probable than it would be without that evidence. L-3 Commc'ns Corp. v. OSI Sys., Inc., No. 02-9144, 2006 WL 988143, at *8 (S.D.N.Y. Apr. 13, 2006) (Compendium of Unreported Cases ("Compendium"), Exh. B); Fed. R. Evid. 401, 402. Pursuant to Rule 403, a court may nonetheless exclude relevant evidence if the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See Dallas v. Goldberg, 143 F.Supp.2d 312, 317 (S.D.N.Y. 2001); Fed. R. Evid. 403.

Courts in the Second Circuit have criticized parties' attempts to appeal to economic sympathies or prejudices and have barred testimony to that effect. See, e.g., Koufakis v. Carvel, 425 F.2d 892, 902 (2d Cir. 1970) (plaintiff's reference to defendant as a "multi-millionaire" which suggested "that the defendant should respond in damages because he is rich and the plaintiff is poor" was grounds for a new trial); L-3 Commc'ns Corp., 2006 WL 988143, at *6 (granting motion in limine and excluding as irrelevant and unfairly prejudicial testimony regarding witness's wealth and lifestyle).

Plaintiff will be able to succeed on his negligent misrepresentation claim by demonstrating that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have

known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000); Brinsights, LLC v. Charming Shoppes of Del., Inc., 06 Civ. 1745 (CM), 2008 WL 216969, at *7 (S.D.N.Y. Jan. 16, 2008) (Compendium, Exh. A).

None of the evidence relating to Kinsey's compensation at Bluegreen has any bearing on Kinsey's claim or FFD's defenses thereto.  The negligence and negligent misrepresentations at issue occurred prior to April 1, 2002, the date that Kinsey's Stock Options were said to expire.  Kinsey did not commence employment with Bluegreen until early 2003, approximately one year thereafter.  Kinsey contends that he was damaged in relation to the lost value of his Stock Options.  FFD denies this contention.  Whether Kinsey became a billionaire or pauper after the operative events concerning the misrepresentation has no bearing whatsoever on his claim or on FFD's defenses.  Nor is the evidence sought to be excluded relevant in any way to Kinsey's claim for damages.  Kinsey's damages claims are not subject to any duty of mitigation.  Therefore, the compensation that he received at Bluegreen is wholly irrelevant.

Even if the evidence at issue was relevant, moreover, its minimal probative value would be far outweighed by the danger of unfair prejudice, confusion of issues and the misleading of the jury.  Most members of the jury, it is fair to presume, are unlikely to be earning incomes in the range of Kinsey's $390,000 compensation package at Bluegreen.  It is expected that FFD will attempt, through use of evidence of Kinsey's compensation at Bluegreen, to portray him as a wealthy man who should not receive relief for his damages.  Courts in this Circuit have, in granting motions in limine relating to evidence of this nature, recognized the

11

dangers of such appeals to economic sympathies or prejudices. See, e.g., Kloufakis, 425 F.2d at 902; L-3 Commons Corp., 2006 WL 988143, at *6. FFD should not be permitted to use evidence regarding Kinsey's compensation at Bluegreen to prejudice the jury against him in relation to his negligence and negligent misrepresentation claims.

## V.

## CONCLUSION

For the reasons set forth herein, Plaintiff Douglas Kinsey respectfully requests that Defendant be precluded from introducing evidence regarding Kinsey's compensation in relation to his post-Fairfield employment with Bluegreen.

Dated:   October 20, 2008         Respectfully submitted,
         New York, New York

**CROWELL & MORING LLP**

By: _____*s/ Ira M. Saxe*_____
          Ira M. Saxe (IS 6051)

Jeffrey W. Pagano (JP 1408)
153 E. 53rd St., 31st Floor
New York, New York 10022
(212) 223-4000
(212) 223-4134 (fax)

Attorneys for Plaintiff Douglas Kinsey

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2008, I caused to be electronically filed the foregoing Plaintiff's Motion In Limine to Exclude Evidence utilizing the Court's CM/ECF system, which will automatically send notice of such filing to the following attorneys of record, and served this document as well by first class mail delivery to the undersigned attorneys of record:

>Samuel Kadet, Esq.
>Skadden, Arps, Slate, Meagher & Flom LLP
>Four Times Square
>New York, NY 10036

*s/ Ira M. Saxe*
Ira M. Saxe

NYIWDMS: 10685308_1