**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| DOUGLAS KINSEY,  :  <br>  :  <br> Plaintiff,  :  <br>  :  <br> v.  :  <br>  :  <br> CENDANT CORPORATION, FAIRFIELD  :  <br> RESORTS INC., and FFD DEVELOPMENT  :  <br> COMPANY, L.L.C.,  :  <br>  :  <br>  :  <br> Defendants.  :  <br>  : | **Document Electronically Filed** <br><br> Case No. 1:04-cv-00582-RWS <br><br> (ECF CASE) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE**

Samuel Kadet
samuel.kadet@skadden.com
Sarah Heckman Yardeni
sarah.yardeni@skadden.com
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000

Attorneys for FFD Development Company, L.L.C.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................ 2

I.    Evidence Regarding Kinsey's Employment at Bluegreen is Relevant .............................. 2

II.    Evidence Pertaining to Kinsey's Employment at Bluegreen is Not Prejudicial ................ 5

CONCLUSION ......................................................................................................................... 7

## TABLE OF AUTHORITIES

### CASES

Page

Abrahami v. UPC Construction Co.,
    224 A.D.2d 231 (lst Dep't 1996) .................................................................................. 4

AHT Corp. v. Moses,
    123 F. App'x 17 (2d Cir. 2005) ................................................................................... 3

Berman Enterprises Inc. v. Local 333,
    644 F.2d 930 (2d Cir. 1981) ........................................................................................ 6

Bower v. Weisman,
    674 F. Supp. 113 (S.D.N.Y. 1987) .............................................................................. 6

Hydro Investors, Inc. v. Trafalgar Power Inc.,
    227 F.3d 8 (2d Cir. 2000) ............................................................................................ 4

Koufakis v. Carvel,
    425 F.2d 892 (2d Cir. 1970) ........................................................................................ 5

L-3 Communications Corp. v. OSI Systems, Inc.,
    No. 02 Civ. 9144 (PAC), 2006 WL 988143 (S.D.N.Y. Apr. 13, 2006) ...................... 5

Matsumura v. Benihana National Corp.,
    542 F. Supp. 2d 245 (S.D.N.Y. 2008) ......................................................................... 3

Orlando v. Kukielka,
    40 A.D.3d 829 (2d Dep't 2007) ................................................................................... 3

PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co.,
    No. 99 Civ. 3794 (BSJ), 2003 WL 22118977 (S.D.N.Y. Sept. 11, 2003) .................. 3

Republic National Bank v. Hales,
    75 F. Supp. 2d 300 (S.D.N.Y. 1999), aff'd, 4 F. App'x 15 (2d Cir. 2001) ................. 5

United States v. Guttenberg,
    No. 07 CR 141 (DAB), 2007 WL 4115810 (S.D.N.Y. Nov. 14, 2007) ..................... 6

### STATUTES

Fed. R. Evid. 401 ............................................................................................................. 2, 3

Defendant FFD Development Company, L.L.C. ("FFD"), respectfully submits this memorandum of law in opposition to Plaintiff Douglas Kinsey's Motion <u>In Limine</u> (the "Motion") requesting exclusion of certain evidence relating to his employment at Bluegreen Corporation ("Bluegreen"). For the following reasons, the Motion should be denied in all respects.

**PRELIMINARY STATEMENT**

Although Kinsey has consistently attempted to portray himself as a "babe in the woods" allegedly led astray by a purported misrepresentation about the expiration date of certain stock options, the evidence in this case, some of which Kinsey now seeks to exclude, demonstrates the contrary. Indeed, the evidence shows that Kinsey is a sophisticated business person who knows his way around the world of compensation and benefits. In that regard, after resigning from Fairfield Resorts, Inc. ("Fairfield"[1]), Kinsey joined a large competitor of Fairfield, Bluegreen, where he had successfully negotiated for himself an increased salary, and was compensated generously in accordance with the high level of corporate responsibility he assumed. Specifically, the evidence of Kinsey's employment at Bluegreen -- including his understanding of the need to confirm in writing the specifics of his employment contract, as well as the compensation package he received of close to half a million dollars in his first year alone -- unequivocally demonstrates that Kinsey was and is a savvy executive.

Despite being an experienced businessman with a great deal of responsibility, Kinsey's claim against FFD is wholly based on his reliance on a single representation allegedly made to him regarding the expiration date of certain options to acquire Cendant stock that had

---

[1] Fairfield was the Cendant subsidiary that employed Kinsey at the time of his resignation, however all claims brought against Fairfield have now been dismissed.

been awarded to him initially by Fairfield (the "Options"). (Motion at 4-5.) Kinsey does not deny that the representation was made by an employee who was not responsible for, or familiar with, Fairfield's or Cendant's benefits packages or options (id.); following this representation, Kinsey was instructed, repeatedly, to "confirm" the expiration date of the Options (id.); Kinsey was aware of a written Grant Detail Report showing the (correct) expiration date of April 1, 2002 (id.); and he could have confirmed the expiration date from the stock option manager at Cendant or the plan administrator, Merrill Lynch (id. at 4-6). Yet, it is undisputed that Kinsey did nothing to definitively confirm the expiration date of his Options. (Id.)

Pursuant to well-established case law, a party's sophistication must be examined in determining whether his or her reliance on a purported representation is reasonable. Evidence of Kinsey's employment at Bluegreen, including Kinsey's rank and compensation, demonstrates Kinsey's position as a sophisticated executive who must be held to a commensurate standard when evaluating the reasonableness of his reliance. In light of his sophistication, Kinsey had a duty to use available sources to confirm the representations made to him concerning the expiration date of the Options. In the face of his utter failure to do so, Kinsey's reliance on the alleged oral representation was unreasonable.

## ARGUMENT

### I. Evidence Regarding Kinsey's Employment at Bluegreen is Relevant

Federal Rule of Evidence 401 defines relevant evidence liberally as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). To establish a negligent misrepresentation claim, the reasonableness of a party's reliance on the representations at issue is plainly a "fact

2

that is of consequence," a basic point Kinsey ignores completely in his moving papers. Id.; Matsumura v. Benihana Nat'l Corp., 542 F. Supp. 2d 245, 256 (S.D.N.Y. 2008) ("A plaintiff must prove reasonable reliance to recover on a claim for . . . negligent misrepresentation.").

To determine whether reliance is reasonable, the entire context of the transaction must be considered, including the sophistication of the plaintiff. See id. at 257 (citing Emergent Capital Inv. Mgmt. LLC v. Stonepath Group, Inc., 343 F.3d 189, 195 (2d Cir. 2003)); AHT Corp. v. Moses, 123 F. App'x 17, 18 (2d Cir. 2005). It is axiomatic that a sophisticated party is held to a higher level of scrutiny in establishing the reasonableness of his or her purported reliance and is under a duty to confirm representations using available sources. PPI Enters. (U.S.), Inc. v. Del Monte Foods Co., No. 99 Civ. 3794 (BSJ), 2003 WL 22118977, at *20-21 (S.D.N.Y. Sept. 11, 2003) (noting that the level of scrutiny for determining whether reliance is reasonable is heightened in cases involving sophisticated parties) (citing, inter alia, Abrahami v. UPC Constr. Co., 224 A.D.2d 231 (1st Dep't 1996) (sophisticated plaintiffs had a duty to exercise ordinary diligence and conduct an independent investigation of the transaction at issue)); see also, e.g., AHT Corp., 123 F. App'x at 18 (citing Hyosung Am., Inc. v. Sumagh Textile Co., Ltd., 137 F. 3d 75, 78 (2d Cir. 1998)); Orlando v. Kukielka, 40 A.D.3d 829, 831-32 (2d Dep't 2007).

Here, the evidence which Kinsey is attempting to exclude demonstrates that Kinsey left his position as Senior Vice President of Real Estate Acquisitions at Fairfield -- where he had been responsible for acquisition and development of projects valued at hundreds of millions of dollars -- for an even more lucrative position at Bluegreen with a similarly high level of responsibility. (Motion at 7-9.) Bluegreen was a major competitor of Fairfield with a market capitalization of approximately $600 million. (Id. at 8.) When Kinsey joined Bluegreen in 2003,

3

he became the fourth highest paid executive at Bluegreen, and was compensated at close to half a million dollars in the first year, with his salary and bonus increasing every year thereafter. (Id. at 8-9.)[2] Kinsey negotiated this package himself, which included stock options, through a series of emails he exchanged with Bluegreen executives confirming the details of his offer of employment. (Id.) Such a significant compensation package demonstrates that Kinsey was not merely a lower level employee who may not have been aware of whether, or how, to confirm benefits information, but was a highly ranked executive within both Fairfield and Bluegreen who received a salary commensurate with his experience and responsibilities, and was regularly entrusted with multi-million dollar transaction and decisions. He further plainly understood the need to confirm, in writing, the particulars of important financial commitments and decisions.

Kinsey's sophistication must be considered by the fact finder in determining whether Kinsey's claimed reliance -- on a remark made by someone who was admittedly unfamiliar with the issue -- was reasonable. In particular, in light of Kinsey's sophistication, Kinsey's failure to use any number of alternative sources to confirm the purported oral representation must be considered in evaluating the reasonableness of his claimed reliance. Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 21-22 (2d Cir. 2000) (rejecting negligent misrepresentation claim and finding sophisticated businessmen's reliance was unreasonable because they failed to take advantage of access to critical information) (citing, inter alia, Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91, 101 (2d Cir. 1997)); Abrahami v. UPC Constr. Co., 224 A.D.2d 231, 234 (lst Dep't 1996) (vacating judgment in favor of plaintiff after a non-jury trial because, inter alia, required element of reasonable reliance was

---

[2]  Kinsey argues that evidence of his compensation package at Bluegreen should be excluded as irrelevant because it has no bearing on his claimed damages. (Motion at 11.) As explained, this is not the purpose for which FFD proposes to use this evidence.

4

lacking where plaintiffs were sophisticated businessmen and had a duty to discover the truth of the representations made).

## II. Evidence Pertaining to Kinsey's Employment at Bluegreen is Not Prejudicial

Kinsey suggests that FFD will use evidence of his compensation at Bluegreen to "portray him as a wealthy man who should not receive relief for his damages," and that, as such, the evidence should be excluded as prejudicial and because it could mislead and confuse the jury. (Motion at 11-12.) As explained above, however, FFD does not intend to use this evidence to appeal to some purported "economic prejudice," but instead to demonstrate Kinsey's degree of sophistication and thus the reasonableness of his reliance.[3] Kinsey should not be permitted to shield this evidence and portray himself as a neophyte led astray by FFD when, in reality, he is an extremely sophisticated businessman employed by a large corporation and compensated generously for his expertise. See, e.g., Republic Nat'l Bank v. Hales, 75 F. Supp. 2d 300, 313 (S.D.N.Y. 1999) (Sweet, J.) (noting that although the party asserting a misrepresentation claim "has made efforts to pass himself off as a 'babe in the woods' who was taken advantage of by an unscrupulous banking institution possessed of superior information and resources," the claim

---

[3] Accordingly, the cases cited by Kinsey discussing the "dangers" of attempting to appeal to economic prejudices are inapposite. (Motion at 12.) In any event, these cases involved improper attempts by a plaintiff to impermissibly use evidence that served no purpose other than to exact sympathy from the jury. See Koufakis v. Carvel, 425 F.2d 892, 902 (2d Cir. 1970); L-3 Commc'ns Corp. v. OSI Sys., Inc., No. 02 Civ. 9144 (PAC), 2006 WL 988143, at *6 (S.D.N.Y. Apr. 13, 2006). Further, Koufakis v. Carvel, involved such extreme conduct as to have no application here. There, the court concluded that a new trial should have been granted where counsel "repeatedly went beyond the bounds of propriety and characterized opposing counsel [and the defendant] in a manner wholly unjustified by anything in the record." 425 F.2d at 901. The court further listed the litany of "improper arguments and . . . slanderous and baseless epithets" made by counsel, including repeatedly likening the defendant to a "head man" in the Mafia and calling him a "multi-millionaire," and held that counsel "so persistently and continuous[ly] abused the freedom afforded to counsel that his presentation . . . was based on an appeal to passion and prejudice not warranted by the proof." Id. at 901-02, 904 (citations omitted).

5

must fail because "[h]e is neither a widow nor an orphan, however, and his efforts to avoid his contractual obligations by playing the fool are not well taken"), aff'd, 4 F. App'x 15 (2d Cir. 2001).

Further, there is no threat that the information concerning Kinsey's compensation package at Bluegreen will unfairly prejudice or confuse the jury, as it is straightforward evidence which will be used only in the context of reasonable reliance. In all events, should the court perceive any such theoretical prejudice or confusion, this easily could be remedied by any number of limiting safeguards. See, e.g., Berman Enters. Inc. v. Local 333, 644 F.2d 930, 939 (2d Cir. 1981) (affirming decision of Sweet, J. that the probative value of evidence of plaintiff's employees' salaries outweighed any prejudice, where the evidence was relevant and was submitted for "limited purposes, without either undue emphasis or unscrupulous references"); Bower v. Weisman, 674 F. Supp. 113, 117-18 (S.D.N.Y. 1987) (denying motion in limine seeking to exclude personal financial information where that information was directly relevant for reasons other than the determination of damages, and finding that any danger of undue prejudice could be abated by a limiting instruction) (Sweet, J.); see also, e.g., United States v. Guttenberg, No. 07 CR 141 (DAB), 2007 WL 4115810, at *9 (S.D.N.Y. Nov. 14, 2007) (denying motion in limine to exclude evidence of economic circumstances and noting, "[a]t this pre-trial stage, it is improper to preclude all evidence of wealth or economic circumstances on the mere speculation that such evidence could get introduced and exploited in a prejudicial manner").

**CONCLUSION**

For all of the foregoing reasons, Kinsey's motion in limine should be denied in all respects.

Dated: November 3, 2008
New York, New York

Respectfully submitted,

SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP


By:  /s/ Samuel Kadet
Samuel Kadet
samuel.kadet@skadden.com
Sarah Heckman Yardeni
sarah.yardeni@skadden.com
Four Times Square
New York, New York 10036-6522
(212) 735-3000

Attorneys for Defendant, FFD Development Company, L.L.C.