CROWELL & MORING LLP
Jeffrey W. Pagano (JP 1408)
Ira M. Saxe (IS 6051)
153 East 53rd Street, 31st Floor
New York, New York 10022
(212) 223-4000 (telephone)
(212) 223-4134 (fax)

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————x
                                                    :
**DOUGLAS KINSEY,**                                 :
                                                    :
                            **Plaintiff,**          :
                                                    :
                    **v.**                          :
                                                    :
                                                    :
**CENDANT CORPORATION,**                            :
**FAIRFIELD RESORTS INC., AND**                     :
**FFD DEVELOPMENT COMPANY, L.L.C.,**                :
                                                    :
                            **Defendants.**         :
————————————————————x

<u>**Document Electronically Filed**</u>

**Case No.  04 CV 00582 RWS**

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ....................................................................... ii

I. INTRODUCTION ......................................................................... 1

II. STATEMENT OF FACTS AND CASE ................................................ 2

III. ARGUMENT ............................................................................. 5

    A. EVIDENCE REGARDING BRIAN KELLER AND HIS LATE EXERCISE OF STOCK OPTIONS IS RELEVANT AND WOULD NEITHER UNFAIRLY PREJUDICE THE DEFENDANT NOR MISLEAD THE JURY ...................................... 5

    B. EVIDENCE REGARDING KINSEY'S DAMAGES IS APPROPRIATE FOR PRESENTATION AT TRIAL ........................ 9

        1. Defendant Misstates the Applicable Calculation for the Lost Value of Unexercised Stock Options in a Neglience Case .................................................. 10

        2. Kinsey May Properly Present Evidence Regarding His Planned Disposition of the Options ...................... 13

IV. CONCLUSION ......................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

## <u>FEDERAL COURT CASES</u>

<u>Blazina v. Port Auth. of N.Y. & N.J.</u>,
No. 06 Civ. 481 (KNF), 2008 WL 4539484 (S.D.N.Y. Oct. 7, 2008) .................. 6

<u>Boosey & Hawkes Music Publishers v. The Walt Disney Co.</u>,
No. 93 Civ. 0373, 2000 WL 204524 (S.D.N.Y. Feb. 18, 2000) .......................... 13

<u>Commonwealth Assocs. v. Palomar Med. Techs., Inc.</u>,
982 F.Supp. 205 (S.D.N.Y. 1997) ........................................................................ 12

<u>Kinsey v. Cendant Corp.</u>,
521 F.Supp.2d 292, (S.D.N.Y. 2007) ................................................................... 7

<u>Edward Andrews Group Inc. v. Addressing Servs. Co.</u>,
No. 07 Civ. 4607 (AJP), 2008 WL 759337 (S.D.N.Y. Mar. 24, 2008) ................. 6

<u>Elliot v. Nelson</u>,
301 F. Supp. 2d 284 (S.D.N.Y. 2004) ................................................................. 6

<u>ESPN, Inc. v. Office of the Comm'r of Baseball</u>,
76 F.Supp.2d 416 (S.D.N.Y. 1999) ..................................................................... 14

<u>Halifax Fund v. MRV Commcn's, Inc.</u>,
No. 00 CIV 4878 (HB), 2001 WL 1622261 (S.D.N.Y. Dec. 18, 2001) ............... 11

<u>Hermanowski v. Acton Corp.</u>,
580 F.Supp. 140 (E.D.N.Y. 1983) .................................................................. 11, 13

<u>In re Coin Phones, Inc.</u>,
203 B.R. 184 (S.D.N.Y. Bankr. 1996) ................................................................ 12

<u>In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litigation</u>,
517 F.Supp.2d 662 (S.D.N.Y. 2007) ................................................................... 13

<u>Litras v. Long Island R.R.</u>,
226 Fed.Appx. 31 (2d Cir. 2007) ........................................................................ 14

<u>Onanuga v. Pfizer, Inc.</u>,
No. 03 Civ. 5405 (CM), 2003 WL 22670842 (S.D.N.Y. Nov. 7, 2003) .............. 12

Russo v. Banc of Am. Sec., LLC,
    No. 05 Civ. 2922, 2007 WL 1946541 (S.D.N.Y. June 28, 2007)......................... 6

Sadler v. Moran Towing Corp.,
    No. 01 Civ. 1666 LAK, 2002 WL 1977604 (S.D.N.Y. Aug. 28, 2002)................. 9

United States v. Beech-nut Nutrition Corp.,
    871 F.2d 1181 (2d Cir. 1989)............................................................................. 9

United States v. Cartwright,
    411 U.S. 546 (1973) ....................................................................................... 11

United States v. Mancebo-Santiago,
    875 F.Supp. 1030 (S.D.N.Y. 1995)..................................................................... 6

Zoll v. Jordache Enters. Inc.,
    No. 02 Civ. 3652, 2004 WL 527056 (S.D.N.Y. Mar. 16, 2004)......................... 13

## STATE COURT CASES

Scalp & Blade, Inc. v. Advest, Inc.,
    309 A.D.2d 219, 765 N.Y.S.2d 92 (4th Dep't 2003) ....................................10, 12

Wey v. N.Y. Stock Exch., Inc.,
    No. 602510/05, 2007 WL 1238596 (N.Y. Sup. Ct., N.Y. Cty. Apr. 10, 2007).... 11

## FEDERAL RULES OF EVIDENCE

Fed. R. Civ. Pro. 12(b)(6)............................................................................... 13

Fed. R. Evid. 401 ............................................................................................ 5

# I.

# INTRODUCTION

Plaintiff Douglas Kinsey ("Kinsey" or "Plaintiff") respectfully submits this Memorandum of Law in opposition to the Motion in Limine filed on behalf of Defendant FFD Development Company, LLC ("Defendant" or "FFD") Defendant's Motion in Limine ("Defendant's Motion").  Defendant's Motion seeks to prevent Kinsey from presenting critical evidence in support of his claims for negligence and negligent misrepresentation in relation to the exercise period of his stock options.  Kinsey seeks to demonstrate that Brian Keller ("Keller"), an FFD executive similarly situated to Kinsey and treated as such by FFD, was allowed to exercise his stock options after the exercise period for his options had already expired.  This comparative evidence relates directly to FFD's failure to fulfill its duty in relation to Kinsey.  FFD has presented no reasonable basis to infer that the evidence that Kinsey seeks to present will result in unfair prejudice or mislead the jury.  In any event, the probative value of this evidence far outweighs the hypothetical dangers proffered by FFD.

Defendant's Motion also seeks to exclude Kinsey's unopposed assertions, supported by testimonial and documentary evidence, regarding his intentions in relation to the stock options at issue.  Defendant's reliance on case law measuring the extent of damages in breach of contract and other unrelated types of cases involving stocks and stock options are inapplicable to the measure of damages in the negligence and negligent misrepresentation claims at issue.

For these reasons, described in greater detail herein, Kinsey respectfully requests that the Court deny Defendant's Motion in its entirety.

1

## II.

## STATEMENT OF FACTS AND CASE

Kinsey respectfully incorporates herein the Statement of Facts and Case, derived from the Court's Opinion in this action, dated September 8, 2008, granting in part and denying in part the motion for summary judgment filed by FFD and former Defendants Cendant Corporation ("Cendant") and Fairfield Resorts, Inc. (collectively, "Defendants"). The facts of particular relevance to Defendant's Motion are summarized below.

Keller, like Kinsey, was a Fairfield employee before the Cendant acquisition of Fairfield and, after the Cendant acquisition, became affiliated with FFD, or Devco. (McConnell Dep. Tr. 122:19-123:15, 141:4-9, Saxe Opp. Decl. Exh. A; Sie Dep. Tr. 44:4-8, Saxe Opp. Decl. Exh. B; Hanning Dep. Tr. 56:22-57:8; Saxe Opp. Decl. Exh. C).

On or about July 3, 2001, approximately three months following the acquisition, FFD informed Kinsey and Keller that the notice that they previously received stating that their Cendant stock options would expire on June 30, 2001 was sent in error. FFD confirmed, by email from Greg Bendlin ("Bendlin"), its Senior Vice President-Legal, that the stock options of former Fairfield employees who became FFD employees, including Kinsey and Keller, had not expired. Bendlin reaffirmed that, as part of the merger, Fairfield's Board of Directors and Compensation Committee amended the 1997 Stock Option Plan "to provide that continued employment at FFD would count as continued employment under the option plan and the 90 day exercise period would not apply once the optionees were no longer Fairfield employees," without any mention of a one-year exercise period. (See July 3, 2001 email from Bendlin to Kinsey and Keller, and attached email chain (Durfee Dep. Exh. 14), Saxe Opp. Decl. Exh. D ("July 3, 2001

Email"); Durfee Dep. Tr. 80:2-10, Saxe Opp. Decl. Exh. E; Bendlin Dep. Tr. 11:11-18, 68:9-69:15, 69:23-70:7, 70:16-25, 72:8-11, Saxe Opp. Decl. Exh. F)

FFD thus confirmed to Kinsey, through Bendlin, that the options awarded to Kinsey and Keller had not expired, because "continued employment at FFD would count as continued employment under the" Fairfield Stock Option Plan. (July 3, 2001 Email, Saxe Opp. Decl. Exh. D; Durfee Dep. Tr. 80:2-10, Saxe Opp. Decl. Exh. E; Bendlin Dep. Tr. 68:9-69:15, 69:23-70:7, 70:16-25, 72:8-11, Saxe Opp. Decl. Exh. F).

Nevertheless, Keller, a Fairfield employee who received stock options and transferred to FFD upon Cendant's acquisition of Fairfield, similarly situated to Kinsey in all relevant respects, was allowed to exercise his stock options more than one year after his transfer to FFD. (Bendlin Dep. Tr. 85:19-20, 85:25-86:6, 87:7-9, 88:1-4, 90:13-16, 94:12-24, 95:9-12, 96:4-9, Saxe Opp. Decl. Exh. F; Sie Dep. Tr. 44:4-8, Saxe Opp. Decl. Exh. B). Kinsey was not.

Despite the fact that Keller was similarly situated to Kinsey in all relevant respects, Richard Meisner ("Meisner"), a senior counsel in the Cendant Law Department, falsely notified Kinsey that he was "the only one in this situation, so please do not speak to other Devco employees." (April 9, 2003 email from Meisner to Kinsey (Durfee Dep. Exh. 41), Saxe Opp. Decl. Exh. G; Durfee Dep. Tr. 136:17-19, Saxe Opp. Decl. Exh. E).

On or about August 13, 2001, Bendlin once again advised Kinsey and Keller, by email, that their options had "not expired because of the special provisions made for the Fairfield employees (Brain and Doug) who transferred to FFD," and in so doing re-transmitted his July 3, 2001 Email advising Kinsey that "continued employment at FFD would count as continued employment under the" Plan. (See August 13, 2001 email from Bendlin to Keller and Kinsey,

3

and attached email chain (Durfee Ex. 15), Saxe Opp. Decl. Exh. H; Durfee Dep. Tr. 80:24-81:6, 81:9-11, 20-23, Saxe Opp. Decl. Exh. E).

Bendlin acknowledged, in his August 14, 2001 email to Geri Fitterman ("Fitterman"), Stock Option Manager at Cendant, that Kinsey and Keller were similarly situated in relation to the period in which they were to exercise their converted stock options, which he referred to as "Fairfield Options."  (Bendlin's August 14, 2001 email to Fitterman (Kinsey Dep. Exh. 21), Saxe Opp. Decl. Exh. I ("August 14, 2001 Email") (Bendlin Dep. Tr. 12:3-4, 25:9-15, Saxe Opp. Decl. Exh. F), Kinsey Dep. Tr. 167:8-21, Kadet Decl. Exh. A).  Bendlin stated in his August 14, 2001 Email that he thought that Kinsey's and Keller's options "do not expire until after 4/1/02."  (August 14, 2001 E-mail).  Bendlin further represented in his August 14, 2001 Email that he would obtain further information and "inform Brian and Doug so the matter can be put to rest."  (Id.)

Keller's stock options, issued under the 1997 Fairfield stock option plan and, like Kinsey's, converted to Cendant stock option, expired, like Kinsey's.  Nevertheless, Keller was allowed to exercise them after the expiration date.  (McConnell Dep. Tr. 56:11-18, Saxe Opp. Decl. Exh. A; Hanning Dep. Tr. 74:11-20, Saxe Opp. Decl. Exh. O)).  Neither Bendlin nor Jack McConnell, CEO of the Cendant Time Share Resort Group, which oversaw the operations of Fairfield, could not think of any reason while Keller was able to exercise his options after the expiration of the exercise period, but Kinsey was not.  (McConnell Dep. Tr. 20:3-22, 68:22-69:9, 160:9-161:2, Saxe Opp. Decl. Exh. A; Bendlin Dep. Tr. 95:9-12, 96:4-9, Saxe Opp. Decl. Exh. F).

Kinsey demonstrated, during the discovery process, that he would have exercised the stock options at issue, and sold the resulting shares when the price of the stock hit $23.75 per share. Kinsey testified, without opposition, that he would have exercised his option prior to the April 2002 expiration date "[i]f that was [his] only option . . . ." (Kinsey Dep. Tr. 95:8-17, Kadet Decl. Exh. A). He testified as well, without opposition, that it was "always [his] objective" to sell his Cendant shares when they reached at $23.75 per share and that, in March 2004, "that's what [he] ultimately sold the options that [he] was vested at." (Id. at 91:3-11. See also id. at 92:20-93:4). In fact, Kinsey sold his other Cendant shares at $23.75 per share, just as he intended. (Kinsey Decl. ¶¶ 2-3 and Exhibit A, March 2004 Merrill Lynch statement). "That was [his] objective," Kinsey testified," and "that's what [he] sold at." (Id. at 91:15-19).

## III.

## ARGUMENT

**A.    EVIDENCE REGARDING BRIAN KELLER AND HIS LATE EXERCISE OF STOCK OPTIONS IS RELEVANT AND WOULD NEITHER UNFAIRLY PREJUDICE THE DEFENDANT NOR MISLEAD THE JURY**

Defendant correctly notes that, under Federal Rule of Evidence 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Memorandum of Law in Support of Defendant's Motion in Limine ("Def. Mem."), p. 3, quoting Fed. R. Evid. 401. In asserting the flip side of this proposition, that "facts that are not relevant to any element of an alleged claim do no fall within the ambit of Rule 401 and must be excluded as irrelevant." Id. Defendant cites cases in support of this proposition that are rather obvious and inapposite to the Keller evidence at issue. See United States v.

Mancebo-Santiago, 875 F.Supp. 1030, 1031 (S.D.N.Y. 1995) (federal government sought *in limine* ruling in criminal prosecution of illegal reentry into the United States after arrest and deportation); Blazina v. Port Auth. of N.Y. & N.J., No. 06 Civ. 481 (KNF), 2008 WL 4539484, at *1-4 (S.D.N.Y. Oct. 7, 2008) (in lawsuit alleging violations of plaintiff's Fourth and Fourteenth Amendment rights stemming from his arrest for public lewdness at a public rest room, *in limine* ruling addressed admissibility of deposition errata, the plaintiff's daughter's bout with cancer, surveillance videotape of the plaintiff and web-site screen print relating to the defendant police officer's presence at the public restroom); Edward Andrews Group Inc. v. Addressing Servs. Co., No. 07 Civ. 4607 (AJP), 2008 WL 759337, at *2 (S.D.N.Y. Mar. 24, 2008) (excluding, as irrelevant to unjust enrichment and breach of contract claims, services performed prior to relevant agreement).

　　　　More importantly, the evidence relating to Keller, a similarly situated Fairfield and, later, FFD executive who exercised his expired options, is highly relevant to Kinsey's claims for negligence and negligent misrepresentation.  Defendant acknowledges that Kinsey must establish, in connection with his negligent misrepresentation claim, inter alia, that it "had a duty, as a result of a special relationship, to give correct information," that it "made a false representation that [it] should have known was incorrect," and that "the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose."  Def. Mem. p. 4, quoting Elliot v. Nelson, 401 F.Supp.2d 284, 287 (S.D.N.Y. 2004). Defendant asserts as well that, in order to demonstrate negligence, Kinsey must establish that it "owed him a cognizable duty of care."  Def. Mem., p. 4, quoting Russo v. Banc of Am. Sec., LLC, No. or Civ. 2922, 2007 WL 1946541, *7 (S.D.N.Y. June 28, 2007).  Evidence regarding Keller will assist Kinsey in meeting this burden.

The manner in which FFD treated a similarly situated executive in connection with the precise question at issue is highly relevant to these elements of Kinsey's claims. Indeed, for a time FFD considered Kinsey and Keller, two Fairfield executives with Fairfield stock options that became Cendant options after they went to FFD, as one for this purpose. Both Keller and Kinsey were informed that their options had expired 90 days after the Cendant acquisition, and were then both notified that the options would not expire at that time. (See pp. __, supra). Bendlin, FFD's Senior Vice President-Legal, advised both Keller and Kinsey on July 3, 2001 that the options awarded to them had not expired because "continued employment at FFD would count as continued employment under the" Stock Option Plan. (July 3, 2001 Email, Saxe. Opp. Decl. Exh. D). Bendlin himself conceded, in his August 14, 2001 email to Fitterman, that Kinsey and Keller were similarly situated, in that their options "do not expire until after 4/1/02." (August 14, 2001 Email, Saxe Opp. Decl. Exh. I). It was in this same email that Bendlin committed to obtain further information and "inform Brian and Doug so the matter can be put to rest." (Id.)

Defendant improperly suggests in support of its Motion that this Court already ruled that evidence regarding Keller is inadmissible. See Def. Mem. pp. 4-5, citing Kinsey v. Cendant Corp., 521 F.Supp.2d 292, 305 (S.D.N.Y. 2007). The Court merely held, however, that evidence regarding Keller, in the context of Kinsey's breach of contract claim, was inadmissible extrinsic evidence not sufficient to establish an ambiguity in relation to the Stock Option Plan and Stock Option Agreement upon which that claim was grounded. Id. ("To the extent Kinsey has sought to rely on such evidence in an attempt to establish that the Plan and Option Agreement, as amended, was ambiguous, 'extrinsic evidence may not be used to create an ambiguity'"). The Court did not consider or rule upon Kinsey's negligence and negligent

misrepresentation claims in its Opinion, as those claims were not at issue.  Despite FFD's misleading reference, this Court has not, to date, reached the question of whether evidence regarding Keller is relevant to Kinsey's negligence and negligent misrepresentation claims.  For the reasons stated herein, Kinsey contends that this evidence is highly relevant to those claims.

FFD also asserts that, even if evidence relating to Keller's late exercise of his converted Cendant stock options was relevant, such evidence "should be excluded for the additional reason that its introduction is designed solely to elicit the jury's sympathy in an inappropriate effort to excuse Kinsey from his own negligence in failing timely to exercise the Options."  Def. Mem. p. 5.  Thus, Defendant does not even assert that this evidence is prejudicial or misleading in relation to Kinsey's case in chief.  Nor does FFD provide a cogent basis for its supposed fear that Kinsey is seeking to elicit the jury's sympathy in an inappropriate manner.  FFD informed both Keller and Kinsey, incorrectly, that their stock options had expired, and then informed them that they had not expired.  FFD, through its Senior Vice President-Legal, then notified both Keller and Kinsey that "continued employment at FFD would count as continued employment under the" Plan.  (See August 13, 2001 email from Bendlin to Keller and Kinsey, and attached email chain (Durfee Ex. 15), Saxe Opp. Decl. Exh. H; Durfee Dep. at 80:24-81:6, 81:9-11, 20-23, Saxe Opp. Decl. Exh. E).  Bendlin also confirmed that the options "do not expire until after 4/1/02" and committed to "inform Brian and Doug so the matter can be put to rest." (August 14, 2001 Email, Saxe Opp. Decl. Exh. I).  Yet Keller was able to exercise his expired options after the end of the option period, and Kinsey was not.  It is difficult to fathom how the jury could be misled by this evidence, or how any unfair prejudice in relation to this evidence outweighs its strong probative virtue in relation to Kinsey's claims.

The authority cited by FFD to support its position is off point. <u>See</u> Def. Mem. pp. 5-6; <u>citing</u> <u>United States v. Beech-nut Nutrition Corp.</u>, 871 F.2d 1181, 1183 (2d Cir. 1989) (contentions of errors in admission or exclusion of evidence on an appeal from conviction on 359 counts of introducing adulterated and misbranded apple juice into interstate commerce); <u>Sadler v. Moran Towing Corp.</u>, No. 01 Civ. 1666 LAK, 2002 WL 1977604, at *1 (S.D.N.Y. Aug. 28, 2002) (motion in limine to preclude plaintiff seaman from offering evidence as to defendants' internal bookkeeping designation of payments in Jones Act case).

For these reasons, Kinsey respectfully request that the Court deny this aspect of Defendant's Motion and allow him to present crucial evidence relating to Keller and the exercise of his options.

## B.   EVIDENCE REGARDING KINSEY'S ACTUAL DAMAGES IS APPROPRIATED FOR PRESENTATION AT TRIAL

Defendant's Motion also seeks to preclude Kinsey from presenting evidence of the manner in which he was actually damaged by FFD's negligence and negligent misrepresentations.  As Defendant recognizes, Kinsey determined that he would convert his Cendant options and sell his Cendant shares when the stock price hit $23.75 per share.  Kinsey was true to his word, and exercised other Cendant stock when it hit that price.  (<u>See</u> pp. 4-5, <u>supra.</u>  <u>See</u> <u>also</u> Def. Mem. pp. 7-8).  Kinsey's action demonstrates that, had he not been deprived of his opportunity to exercise his Cendant stock options through FFD's negligence and negligent misrepresentations, he would have exercised those options and sold the shares at the $23.75 price.  (Kinsey Dep. Tr. 91:3-11, 92:20-93:4, 95:8-17, Kadet Decl. Exh. A; Kinsey Decl.

¶¶ 2-3 and Exh. A). For the reasons stated herein, this aspect of Defendant's Motion should be denied.

As an initial matter, Defendant's Motion to preclude Kinsey's introduction of damages evidence is essentially a motion for summary judgment disguised as a motion in limine. See Scalp & Blade, Inc. v. Advest, Inc., 309 A.D.2d 219, 224, 765 N.Y.S.2d 92, 96 (4th Dep't 2003) ("although labeled one in limine," defendant's motion "does not merely limit the production of certain evidence as immaterial to damages, but rather effectively grants defendants partial summary judgment on the critical substantive issue of what constitutes the proper measure of damages on plaintiffs' causes of action"). FFD has already filed, along with the other Defendants, two previous motions for summary judgment, one of which directly addressed the issue of the measure of Kinsey's damages. One of these prior motions was filed after the Court's summary judgment deadline. Defendant now seeks to prevent Kinsey from obtaining full relief at trial through what is essentially a third motion for summary judgment. As is fully set forth below, Defendant misleadingly states that Kinsey's relief should be measured by the standard applicable in breach of contract cases and argues that evidence of Kinsey's future disposition of stock options is speculative. (Def. Mem. pp. 6-9). Defendant is wrong on both counts.

1.    **Defendant Misstates the Applicable Calculation for the Lost Value of Unexercised Stock Options in a Negligence Case**

Defendant's arguments regarding the measure of damages are flawed in that they fail to take into account the fluctuating value of Kinsey's stock options and that he would have had the opportunity, as he did with his other Cendant stock, to sell the options at a chosen price. Indeed, it is specious and fanciful at best that Defendant urges the Court, without authority

applicable to claims of negligence or negligent misrepresentations, to merely calculate damages based upon the average applicable stock price during the period between the alleged misrepresentations and the expiration date of the options. See Def. Mem. pp. 6-7, citing United States v. Cartwright, 411 U.S. 546, 551 (1973) (stock value for "estate tax purposes" would be the "price the estate could have obtained if it had sold the stock on the valuation date, that price being, under Treas. Reg. s 20.2031-2(b), the mean between the highest and lowest quoted selling prices on that day"); Hermanowski v. Acton Corp., 580 F.Supp. 140, 145-46 (E.D.N.Y. 1983) (measuring damages in breach of contract action where defendant rejected plaintiff's exercise of options on a specific date and plaintiff did not rely upon any misrepresentations).

The following measure of damages, which has been applied by this Court in tort actions, provides a more appropriate standard:

> The proper rule to be applied in calculating damages when an item of fluctuating value such as marketable securities is wrongfully sold, converted or not purchased when it should have been . . . is either (1) its value at the time of the wrong or (2) the highest intermediate value reached by the stock between notice of the wrong and a reasonable time thereafter during which the stock could have been replaced . . . whichever of (1) or (2) is better for the wronged party.

Halifax Fund v. MRV Commcn's, Inc., No. 00 CIV 4878 (HB), 2001 WL 1622261, at *5 (S.D.N.Y. Dec. 18, 2001) (Plaintiff's Compendium Exh. A). See also Wey v. N.Y. Stock Exch., Inc., No. 602510/05, 2007 WL 1238596, at *12-13 (Apr. 10, 2007) (Plaintiff's Compendium Exh. C). Thus, at the very least, Kinsey's damages should be computed using the value at which he determined that he would sell, and in relation to his other Cendant shares actually did sell, the shares he would have exercised in the absence of FFD's negligence and negligent misrepresentations.

Defendant's application of a breach of contract measure of damages is likewise misplaced because it is well settled that damages available for breach of contract actions differ vastly from those available in tort actions, such as the instant action alleging negligence and negligent misrepresentation.  While in tort cases compensatory damages "serve to make good, so far as it is possible to do so in dollars and cents, the harm done by the wrongdoer," in contract cases damages merely put the plaintiff "in as good a position as he would have occupied had the contract been kept."  Scalp & Blade, Inc., 309 A.D.2d at 225, 765 N.Y.S.2d at 97 (citations omitted).  Specifically, Kinsey was deprived of the benefit of exercising his options and selling the stocks at a chosen time.  He should be allowed to obtain a recovery that makes good for the harm done by FFD.

Despite Defendant's argument to the contrary, this Court may consider evidence of the manner in which a party would have acted, or what a party would have gained, absent misrepresentations or wrongdoing.  See, e.g., In re Coin Phones, Inc., 203 B.R. 184, 205-06, 214-15 (S.D.N.Y. Bankr. 1996) (Plaintiff's Compendium Exh. B) (awarding party in negligent misrepresentation action compensatory damages based upon what the party would have obtained through continued business and potential deals had it not relied upon misrepresentations).  See also Commonwealth Assocs. v. Palomar Med. Techs., Inc., 982 F.Supp. 205, 208-09 (S.D.N.Y. 1997) (considering damages evidence that plaintiff would have sold shares "promptly after receiving them" from defendant and noting that while there is "inevitability of some imprecision" in assessing damages related to stocks, the court will "look to what would most probably have occurred").

Defendant's citation of Onanuga v. Pfizer, Inc., No. 03 Civ 5405 (CM), 2003 WL 22670842 (S.D.N.Y. Nov. 7, 2003), is similarly inapposite.  There, the plaintiff exercised a

portion of the options that he received from the defendant, and after his death his estate attempted to exercise the remaining options. <u>Id.</u> at *1. The defendant subsequently notified the estate that an error had been made and that plaintiff's options had previously expired. The plaintiff subsequently sued for, <u>*inter alia*</u>, negligence, negligent misrepresentation and breach of contract. <u>Id.</u> Upon the defendant's motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) and motion to strike sections of plaintiff's prayer for relief, the court dismissed plaintiff's negligence and negligent misrepresentation claims and narrowed plaintiff's potential recovery for breach of contract, upon which the defendant did not move. <u>Id.</u> at *3-5. Specifically, the court held that "the proper relief in actions for breach of contract arising out of stock options is 'the difference between the market value of the stock and the option price' as of the date of the breach." <u>Id.</u> at *5, citing <u>Hermanowski v. Acton Corp.</u>, 729 F.2d 921, 922 (2d Cir. 1984). This measure is not appropriate, or applicable, to claims for negligence or negligent misrepresentation.

### 2.    Kinsey May Properly Present Evidence Regarding His Planned Disposition of the Options

Defendant seeks to prevent Kinsey from offering evidence of his intentions regarding the stock options, and resulting stock, that form the basis for this action. Defendant's authority regarding the preclusion of evidence that, it claims, would be irrelevant to the proper measure of damages is off point. <u>See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liability Litigation</u>, 517 F.Supp.2d 662, 664 (S.D.N.Y. 2007) (addressing punitive damages in environmental contamination case); <u>Boosey & Hawkes Music Publishers v. The Walt Disney Co.</u>, No. 93 Civ. 0373, 2000 WL 204524, at *2 (S.D.N.Y. Feb. 18, 2000) (addressing moral rights damages in the context of Disney's reproduction of a prior performance in video format); <u>Zoll v. Jordache Enters. Inc.</u>, No. 02 Civ. 3652, 2004 WL 527056, at *4-5 (Mar. 16, 2004)

(addressing damages available for violations of plaintiff's right to privacy); ESPN, Inc. v. Office of the Comm'r of Baseball, 76 F.Supp.2d 416, 418, 420-21 (S.D.N.Y. 1999) (major league baseball "failed to adequately demonstrate either the fact of damages or the amount of damages" in lawsuit stemming from ESPN's cancellation of baseball broadcast to show football).

Defendant's authority supporting its assertion that juror confusion would result is similarly inapposite. See Zoll, 2004 WL 527056, at *4-5 (plaintiff sought to introduce evidence of defendant's impressive multi-million dollar sales in violation of right to privacy action); Litras v. Long Island R.R., 226 Fed.Appx. 31, 33 (2d Cir. 2007) (affirming exclusion of evidence "showing that defendant refused to authorize back surgery for [plaintiff]" in personal injury action).

FFD shamelessly contends that "Kinsey has conceded that he does not know when prior to April 1, 2002 he would have exercised the Options, had he verified the expiration date . . . ." (Def. Mem. p. 7). As a result of FFD's negligence and negligent misrepresentations, Kinsey will demonstrate, he had no idea that the options at issue expired on April 1, 2002 until long afterwards. FFD is attempting, through the instant Motion, to parlay its tortious conduct into an artificial ceiling on the measure of Kinsey's damages to remedy that conduct. The Court should not countenance this outrageous effort. For all the reasons stated above, Kinsey respectfully asserts that he should be allowed to present evidence of his damages directly addressing the specific manner in which he was harmed.

# IV.

## CONCLUSION

For these reasons, Plaintiff Douglas Kinsey respectfully requests that the Court deny Defendant's Motion in Limine to exclude evidence regarding Brian Keller and his stock options, and Kinsey's damages evidence.

Dated:     November 3, 2008  
            New York, New York

Respectfully submitted,

**CROWELL & MORING LLP**

By:         *s/ Ira M. Saxe*  
            Ira M. Saxe (IS 6051)

Jeffrey W. Pagano (JP 1408)  
153 E. 53rd St., 31st Floor  
New York, New York 10022  
(212) 223-4000 (telephone)  
(212) 223-4134 (fax)

Attorneys for Plaintiff Douglas Kinsey

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2008, I caused to be electronically filed the foregoing Plaintiff's Opposition to Defendant's Motion in Limine utilizing the Court's CM/ECF system, which will automatically send notice of such filing to the following attorneys of record, and served this document as well by first class mail delivery to the undersigned attorneys of record:

Samuel Kadet, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

_s/ Ira M. Saxe_
Ira M. Saxe