UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

DOUGLAS KINSEY,

                Plaintiff,                04 Civ. 582

  -against-                                OPINION

CENDANT CORPORATION, FAIRFIELD
RESORTS INC., and FFD DEVELOPMENT
COMPANY, L.L.C.,

                Defendants.

------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        CROWELL MORING
        153 East 53rd Street, 31st Floor
        New York, NY  10022
        By:  Ira M. Saxe


        Attorneys for Defendants

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
        Four Times Square
        New York, NY  10036
        By:  Samuel Kadet, Esq.
             Lauren Aguiar, Esq.

**Sweet, D.J.**

Before the Court are the motion of Douglas Kinsey ("Kinsey" or "Plaintiff") to exclude evidence of his income and employment subsequent to leaving the employ of prior Defendant Fairfield Resorts Inc. ("Fairfield"), and the motion of FFD Development Company L.L.C. ("FFD" or "Defendant") to exclude evidence pertaining to Brian Keller and certain damages evidence sought to be introduced by Kinsey. For the reasons stated below, Kinsey's motion is granted and FFD's motion is granted in part and denied in part.

## I.  PRIOR PROCEEDINGS

The Defendants made successful motions to dismiss and for summary judgment on all counts in the Amended Complaint with the exception of Counts 6 (Negligence) and 7 (Negligent Misrepresentation). See Kinsey v. Cendant Corp., No. 04 Civ. 0582, 2004 WL 2591946 (S.D.N.Y. Nov. 16, 2004); Kinsey v. Cendant Corp., 521 F. Supp. 2d 292 (S.D.N.Y. 2007). On September 9, 2008, this Court dismissed all remaining claims against Defendants Fairfield and Cendant Corporation ("Cendant") because Kinsey had failed to show that those Defendants owed him

1

any cognizable duty.  See Kinsey v. Cendant Corp., No. 04 Civ. 0582, 2008 WL 4155644 (S.D.N.Y. Sept. 9, 2008).

The instant motions were filed October 20, 2008, and heard November 12, 2008.

## II.  BACKGROUND

The factual background of this dispute was discussed at length in this Court's September 9, 2008 Opinion. Familiarity with that Opinion is assumed.

## III. DISCUSSION

### A.  Plaintiff's Motion is Granted

Plaintiff's motion seeks to exclude any documentary or testimonial evidence sought to be introduced by FFD regarding Kinsey's subsequent position with Bluegreen Corporation ("Bluegreen").  FFD argues that this evidence, related to Kinsey's negotiations and compensation package with Bluegreen, demonstrates that Kinsey is a sophisticated businessperson and is therefore relevant to the reasonableness of his asserted reliance on FFD's representations.

2

It is true that the sophistication of a party is relevant to the reasonableness of his asserted reliance on a defendant's representations.  See Matsumura v. Benihana Nat'l Corp., 542 F. Supp. 2d 245, 257 (S.D.N.Y. 2008) (holding that plaintiff restauranteurs' reliance on counsel for restaurant franchise's statements was not reasonable where plaintiffs were "sophisticated entrepreneurs who built a successful restaurant franchise in one of the most challenging markets in the country and managed numerous other restaurant ventures"); Abrahami v. UPC Constr. Co., Inc., 638 N.Y.S.2d 11, 14 (App. Div. 1996) (holding that plaintiffs, "who are all sophisticated businessmen," failed to establish justifiable reliance "and conduct an independent appraisal of the risk they were assuming").  FFD is therefore free to present evidence that Kinsey was a sophisticated businessman at the time of the alleged misrepresentations.  However, FFD has failed to demonstrate the relevance of Kinsey's communications with Bluegreen to that issue.  The alleged misrepresentations took place before April 1, 2002.  The evidence related to Bluegreen dates from early 2003.  Kinsey's level of sophistication at that later date is irrelevant to the question of his reasonable reliance in 2001-02.

Even assuming that Kinsey's compensation package and negotiations with Bluegreen are of some limited relevance, that relevance is outweighed by the unfair prejudice that would result from its admission. The parties are not permitted to argue to the fact finder's potential economic sympathies or prejudices. See, e.g., Koufakis v. Carvel, 425 F.2d 892, 902 (2d Cir. 1970) (holding that remarks that "can be taken as suggesting that the defendant should respond in damages because he is rich and the plaintiff is poor" were grounds for a new trial); L-3 Commc'ns Corp. v. OSI Sys., Inc., No. 02 Civ. 9144 (PAC), 2006 WL 988143, at *6 (S.D.N.Y. Apr. 13, 2006) (granting in limine motion excluding evidence of witness's wealth and lifestyle because it was "clearly irrelevant," "and its inclusion would be unfairly prejudicial").

B. **Defendant's Motion Is Granted In Part and Denied In Part**

1. **The Evidence Pertaining to Keller's Options Is Admissible**

FFD's motion seeks to preclude two categories of evidence: first, any evidence pertaining to Keller's options, and second, Kinsey's purported damages evidence.

4

Keller was another FFD employee who held Cendant stock options. Kinsey alleges and seeks to submit evidence to prove that Keller was permitted by Cendant to exercise his stock options after they expired on April 1, 2002. FFD argues that Keller's circumstances were different from those of Kinsey, and that any facts concerning Keller and his options are irrelevant to Kinsey's remaining claims. FFD also argues that the admission of the evidence related to Keller would be prejudicial to FFD, in that it is "designed solely to elicit the jury's sympathy in an inappropriate effort to excuse Kinsey from his own negligence in failing timely to exercise the Options." Def. Mem. 5.

Kinsey argues that the evidence will show that FFD considered Kinsey and Keller, two Fairfield executives with Fairfield stock options that became Cendant options after they went to FFD, as one for some period of time. Both Keller and Kinsey were informed that their options had expired 90 days after the Cendant acquisition, and were then both notified that the options would not expire at that time. Bendlin, FFD's Senior Vice President-Legal, advised both Keller and Kinsey on July 3, 2001, that the options awarded to them had not expired because "continued employment at FFD would count as continued employment under the" Stock Option Plan. Kinsey argues that

5

Bendlin also recognized in a August 14, 2001 email that Kinsey and Keller were similarly situated, in that their options "do not expire until after 4/1/02." In the same email, Bendlin stated that he would seek to "inform Brian and Doug so the matter can be put to rest."

Kinsey argues that the Keller evidence is relevant to the question of whether FFD "had a duty, as a result of the special relationship, to give correct information," "made a false representation that [it] should have known was incorrect," and that "the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose." Pl. Opp. 6, quoting Def. Mem. 4 (quotation omitted).

Although it is not entirely clear, Kinsey appears to argue that the treatment of Keller amounts to an admission that FFD misled Kinsey and Keller as to their options' expiration date. In light of the apparent relevance of the Keller evidence to this central issue in the case, FFD's motion is denied.

**2. Kinsey's Damages Evidence Is Too Speculative**

6

FFD also seeks to exclude evidence offered by Kinsey to support the contention that he would have "converted his Cendant options and s[old] his Cendant stock when the stock price hit $23.75" per share in 2004. Pl. Opp. 9; Def. Reply 3. Kinsey's evidence to this effect is the fact that he sold other Cendant shares at that price and his own testimony that it was "always his objective" to sell his Cendant shares when they reached a value of $23.75 per share. Pl. Opp. 5.

In Galigher v. Jones, 129 U.S. 193 (1889), the Supreme Court articulated what has come to be known as the New York rule: "the proper rule to be applied in calculating damages when an item of fluctuating value is wrongfully sold, converted or not purchased when it should have been." Schultz v. Commodity Futures Trading Comm'n, 716 F.2d 136, 140 (2d Cir. 1983). In Galigher, a stockbroker was held to have wrongfully failed to purchase certain shares on behalf of his customer and also sold certain stock even though the customer had not given him an order to sell. The Supreme Court stated:

> [T]he measure of damages in stock transactions of this kind is the highest intermediate value reached by the stock between the time of the wrongful act complained of and a reasonable time thereafter, to be allowed to the party injured to place himself in the position he would have been had not his rights been violated.

7

Galigher, 129 U.S. at 200; see also id. at 201 ("[T]he true and just measure of damages in these cases [is] the highest intermediate value of the stock between the time of its conversion and a reasonable time after the owner has received notice of it to enable him to replace the stock.").

In Schultz, the Court of Appeals for the Second Circuit followed Galigher and explained:

> Ordinarily goods have a fixed or relatively stable market value at which they can be replaced, so the measure of damages when such goods are converted is their value at the time of conversion or, in the case of a wrongful sale or purchase, at the time fixed for their delivery. But in the case of goods whose market value is volatile – stock for example – to allow the injured party merely the value of the stock at the time of conversion would provide an inadequate and unjust remedy, because "[t]he real injury sustained by the principal consists . . . in the sale of [the stock] at an unfavorable time, and for an unfavorable price." Thus, it is necessary when assessing damages in this kind of case to include profits possibly lost as a result of the wrongful conduct.

Schultz, 716 F.2d at 139-40 (quoting Galigher, 129 U.S. at 200). Schultz rejected, however, the proposition that a plaintiff is entitled to lost profits beyond the point at which plaintiff had a fair opportunity to repurchase the stock:

> Just as it would be unjust to limit damages to the value of lost stock at the time of conversion, it would be similarly unjust to award as damages the highest value attained by the stock at a point in time well after an injured

8

> party who wanted to continue speculating in the market knew his shares were lost and could have replaced them.

Id. at 140.

The wrong alleged here is analogous to the wrongs addressed in the above-cited cases. Kinsey claims that FFD, by its wrongful actions, deprived him of the opportunity to exercise his options until after the options expired on April 1, 2002. Applying the New York rule to this claim, the proper measure of damages is the difference between the option strike price and the highest intermediate value of the stock between the date of the alleged misrepresentation and a reasonable time after Kinsey received notice of the misrepresentation, at which time the law presumes he could have purchased Cendant stock at the market price and sold it once the price reached $23.75 or any other price of Kinsey's choosing.

FFD argues that the proper measure of damages for the lost value of stock options is the difference between the market value of the stock at the time the options would have been exercised and the option strike price. Because, as FFD acknowledges, there is no way to know when prior to April 1, 2002, Kinsey would have exercised the options had he known the expiration date, FFD proposes that the appropriate measure of

9

damages is the difference between the strike price and the <u>average</u> price of Cendant stock between the date of the alleged misrepresentation and April 1, 2002.

The rule cited by FFD is the appropriate measure of damages for a contract claim. FFD has failed to cite any cases for the proposition that a contract measure of damages should be applied to Kinsey's tort claims. FFD's argument relies exclusively on contract cases. <u>See, e.g.</u>, <u>Hermanowski v. Acton Corp.</u>, 729 F.2d 921, 922 (2d Cir. 1984) (holding in breach of contract action "that the proper measure of damages is the difference between the market value of the stock and the option price"); <u>Onanuga v. Pfizer, Inc.</u>, No. 03 Civ. 5405 (CM), 2003 WL 22670842, at *5 (S.D.N.Y. Nov. 7, 2003) ("[T]he proper relief in actions for breach of contract arising out of stock options is 'the difference between the market value of the stock option and the option price' as of the date of the breach." (quoting <u>Hermanowski</u>, 729 F.2d at 922)).

Although the Court of Appeals for the Second Circuit has rejected the conversion measure of damages in a breach of contract case, <u>see</u> <u>Lucente v. Int'l Bus. Machs. Corp.</u>, 310 F.3d 243, 263 (2d Cir. 2002), the rule articulated by <u>Schultz</u> remains valid for conversion claims. <u>See</u> <u>Oscar Gruss & Son, Inc. v.</u>

10

Hollander, 337 F.3d 186, 196 (2d Cir. 2003).  In Scully v. US WATS, Inc., the Court of Appeals for the Third Circuit reviewed both rules, noting:

> Both the conversion and contract theories presume that a plaintiff has the ability to "cover," in other words, mitigate damages by protecting prospective profit, by entering the market to purchase the lost shares. However, the theories differ markedly as to when that ability to cover is relevant. The conversion theory extends the cover date to a "reasonable time" into the future, and therefore allows a plaintiff to recover from the defendant some prospective profit that may have accrued after the wrongful act. In contrast, the contract theory, as most strictly employed in the stock context, puts the onus on a plaintiff to cover immediately upon the breach because damages are fixed as of the breach date. Therefore, in the stock context, the contract theory does not allow a plaintiff to recover any prospective profit from the defendant.

238 F.3d 497, 510 (3d Cir. 2001).  In the instant case, it would be unfair and irrational to "put the onus" on Kinsey to cover immediately, because the very essence of his claim is that FFD's wrongful acts convinced him that he did not need to exercise the options before their expiration date.  The Court will therefore apply the conversion measure of damages.

FFD has also failed to cite any authority for its proposal that the calculation of damages should use the average stock price, rather than the highest intermediate value, during the relevant period.  The purpose of the New York rule is "'to

11

provide a fair valuation of stocks, by allocating the risk of market fluctuation to the breaching party,' and to redress the unfairness that would result from allowing the party in the wrong to dictate the timing of the innocent party's trading and thus the recoverable damages." Halifax Fund, L.P. v. MRV Commc'ns, Inc., 00 Civ. 4878 (HB), 2001 WL 1622261, at *5 (S.D.N.Y. 2001) (quoting Payne v. Wood, No. 94-1230, 1995 WL 461786, at *7 (6th Cir. 1995)). The relevant number is therefore the highest intermediate value, not the average stock price, for the relevant period. For the same reason, FFD's suggestion that the relevant period ends April 1, 2002, rather than the date that Kinsey was put on notice of the alleged misrepresentation, is rejected. Although Kinsey was contractually required to exercise the options by April 1, 2002, he was not so obligated to sell them by that date, and, should he prevail on his claims, he is entitled to recover the greatest value they attained prior to his being put on notice of the alleged misrepresentation.

The appropriate measure of damages in this case is the difference between the option strike price and the highest intermediate value of the stock between the time of the alleged misrepresentation and a reasonable period after Kinsey was put on notice of the alleged misrepresentation. Kinsey's proffered

evidence of damages is irrelevant to this calculation and is excluded.

**CONCLUSION**

For the reasons stated above, Kinsey's motion in limine is granted, and FFD's motion in limine is granted in part and denied in part.

It is so ordered.

New York, N.Y.
November 24, 2008

ROBERT W. SWEET
U.S.D.J.

13